Jean Adrian SCOTT, Appellant,

v.

**HOUSTON INDEPENDENT SCHOOL DISTRICT, Appellee.**

No. A2970.

Court of Appeals of Texas, Houston (14th Dist.).

May 27, 1982.

Rehearing Denied July 8, 1982.

Robert E. Hall, Bob Hall & Associates, Houston, for appellant.

---

Henry P. Giessel, Talbert, Giessel & Stone, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and PRICE, JJ.

J. CURTISS BROWN, Chief Justice.

This is an appeal from a judgment entered in a suit for Workers' Compensation benefits. The question presented is whether appellant was entitled to have definitions of "harm" and "damage" included in the court's charge to the jury in a case involving an alleged mental or nervous system injury. Finding no reversible error, we affirm the judgment of the trial court.

Jean Scott (Scott or appellant) was an employee of the Houston Independent School District (H.I.S.D. or appellee). It is the policy of H.I.S.D. that teachers are constantly evaluated through visitations, conferences and informal observations. All new teachers are placed on probation for three years during which their performance is assessed frequently. If after the probationary period a teacher is awarded a continuing contract, performance is assessed once every three years thereafter. However, on the basis of such an assessment a teacher may be returned to probationary status.

Scott had taught first and second graders for over ten years before the 1977–78 school year. She had experienced some problems with the assessment process from the start of her career. In her first year she reached a point where she felt stress concerning her conferences and dreaded them. Scott was, however, extended a continuing contract. In 1970 she was transferred to a different school and her assessments indicated steadily declining performance. She was placed on probationary status for the 1976–77 school year.

During the fall of 1977 she had several stressful encounters with H.I.S.D. supervisors. She spent the Christmas holidays home in bed because she felt "wiped out." On the first day of school following the holidays, Scott forgot her lesson plans. She tried to reach a relative by phone to arrange for the plans to be brought to her. Arriving at her classroom a few minutes late, she found her principal waiting for her. Scott was reprimanded in front of the class for being tardy. She became so upset she was unable to continue working and left for home. Her family found her in bed unable to even rise and dress herself.

She was taken to an emergency room and, several days later, was hospitalized under the care of a psychiatrist. Her condition was diagnosed as neurasthenia, a general term encompassing a class of nervous disorders including "anxiety neurosis." It is characterized by a group of symptoms formally ascribed to debility or exhaustion of the nerve centers. After a week in the hospital she was released and allowed to return to work. She was given written notice that her formal job evaluation would be made the next day. H.I.S.D. discharged her on the basis of that evaluation.

Scott filed suit for benefits under the Workers' Compensation Act (the Act). The 1971 amendments to the Act which added "repetitious physical trauma" to the definition of "occupational disease" were interpreted prior to the trial of this case as denying recovery based upon repeated mental trauma sustained on the job. *Transportation Insurance Co. v. Maksyn*, 580 S.W.2d 334 (Tex.1979). Thus the case was pled on the specific incident in which Scott was reprimanded in front of her class. Her theory of recovery was based upon the case of *Bailey v. American General Insurance Co.*, 154 Tex. 430, 279 S.W.2d 315 (1955). There the Supreme Court of Texas interpreted what is now Tex.Rev.Civ.Stat.Ann. art. 8306 § 20 (Vernon Supp.1982), which states:

Wherever the terms "Injury" or "Personal Injury" are used in the Workmen's Compensation Laws of this State, such terms shall mean *damage or harm to the physical structure of the body* .... (emphasis added)

The *Bailey* opinion first holds that the phrase "physical structure of the body," refers to the entire structure of a living individual, not merely to one of its subsystems,

e.g. the skeletal structure. Concerning the terms "damage" and "harm", the *Bailey* opinion defines "harm," used in reference to a living, active structure, such as the human body, as meaning inability to function as it should. The opinion then states:

> The ordinary as well as legal connotation of "harm" is that it is of broader import than "damage." Damage embraces direct physical injury to a cell, tissue, organ or organ system; "harm" to the physical structure of the body embraces also impairment of use or control of physical structures, directly caused by the accident. This interference with use or control in an organism whose good health depends upon unified action and balanced synthesis can be productive of the same disabling signs and symptoms as direct physical injury to the cells, tissues, organs or organ systems.

This interpretation was used to extend benefits to a workman who was on a scaffold when it gave way. He watched a co-worker die in an eight story fall, but he was caught in the cable in such a manner that he escaped death. In fact, the physical injuries he suffered were minimal. However, the traumatic effect of the accident upon his nervous system made it impossible for him to remain employed in the field in which he was trained and depended upon for his livelihood.

Scott claimed the reprimanding incident was an occupational accident in which she was harmed in a fashion similar to the workman in *Bailey*. In the court's charge to the jury, the following definitions and special issues were included:

> "Accident" means an undesigned or unexpected occurrence, traceable to a definite time and place.

> "Injury" means damage or harm to the physical structure of the body *or nervous system* and such diseases or infection as naturally result therefrom, or the incitement, acceleration, or aggravation of any disease, infirmity, or condition previously or subsequently existing, by reason of such damage or harm. (emphasis added)

SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that Plaintiff, Jean A. Scott, sustained an accidental injury on or about January 5, 1978 in the course of her employment for the Houston Independent School District?

The definition of "injury" is the one suggested in 2 State Bar of Texas, Texas Pattern Jury Charges § 20.01 (1970), and comments thereunder. Scott requested the following additional definitions be included:

> "Harm" with reference to a living, active structure—as the body is—means essentially that the structure no longer functions as it should.

> "Damage" is a direct physical injury to a cell, tissue, or organ or organ system.

The request was denied and the case was submitted to the jury. The jury answered, "We do not," to Special Issue No. 1, and a judgment was entered that Scott recover nothing against H.I.S.D.

Scott perfected appeal to this Court complaining by a single point of error of the action of the trial court in refusing to include the requested definitions in the charge.

■ Under Tex.R.Civ.P. 277, the trial court has considerable discretion in deciding what instructions are necessary and proper when submitting issues to the jury. *Mobil Chemical Co. v. Bell*, 517 S.W.2d 245, 256 (Tex.1974). That the trial court give definitions of legal and technical terms is the only requirement. *Rendon v. Texas Employers' Insurance Association*, 599 S.W.2d 890, 896 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.); *Union Oil Co. v. Richard*, 536 S.W.2d 955, 958 (Tex.Civ.App.—Beaumont 1975, no writ).

■ Appellant contends that in a case involving disability such as we have before us, "damage" and "harm" are legal or technical terms, and it is necessary that they be submitted to the jury for a fair submission of a workers' case. We disagree. The Supreme Court in arriving at a definition of "harm" and a construction of the statute in

which it is used, considered the "natural construction" and the "ordinary connotation" of the word. The holding in *Bailey*, we feel, is based on the general definitions of "damage" and "harm." We hold the terms not to be of the legal or technical type which require definition in the court's charge. Therefore, the trial court did not abuse its discretion in refusing to include the definitions. Appellant's case was fairly submitted to the jury, and her point of error is overruled.

The judgment of the trial court is affirmed.