John L. HADA, Jr., and Eugene W. Gill, Appellants,

v.

W.H. HUDSON, Appellee.

No. 13-83-284-CV.

Court of Appeals of Texas, Corpus Christi.

Sept. 20, 1984.

Rehearing Denied Jan. 31, 1985.

Michael Kendrick, Jr., Head & Kendrick, Corpus Christi, for appellants.

Thomas R. Hartnett, Dallas, for appellee.

Before NYE, C.J., and YOUNG and UT-TER, JJ.

## OPINION ON MOTION FOR REHEARING

NYE, Chief Justice.

We grant appellee's motion for rehearing, withdraw our former opinion and judgment of June 28, 1984, and substitute this opinion affirming the judgment of the trial court.

This is an oil and gas case. W.H. Hudson brought suit against John Hada and Eugene Gill to enforce a letter agreement to form an oil and gas unit. Trial was to a jury which answered certain disputed fact questions. The trial court, based on the jury's answers, awarded plaintiff damages. Hada and Gill appeal.

Hudson, appellee herein, and Gill, one of the appellants herein, entered into a letter agreement whereby Gill agreed to drill a test well. There were two amendments to the agreement. They agreed that the well would be drilled on Hudson's Saenz lease (consisting of 80 acres) or on lands covered by an oil and gas unit, in which the Saenz 80-acre lease was to be included. Gill later assigned his interest to Hada. They further agreed that, upon completion of the test well, Hudson would assign a 100% working interest in the oil and gas rights in the Saenz lease to Gill, and Gill would pool Hudson's 80-acre Saenz lease with 212.9 acres which made up the Hada Carver No. 1 lease. Hudson reserved a net 20% revenue interest in the 80 acres which was to be assigned to Gill upon completion of the well. The rights which were to be assigned to Gill would be for oil and gas reservoirs encountered in the test well below the 8,507 foot depth. It was this depth where the Saenz 80-acre lease was presently producing. Rights were also assigned under the contract for such "new" oil and gas reservoirs above the 8,507 foot depth which were not present and/or not considered productive in the Saenz lease.

The test well was not completed upon Hudson's 80 acres, but was completed on the Hada Carver No. 1 lease. The Hada Carver No. 1 lease had several owners. Hudson demanded that Hada pool his lease with the Carver lease according to the contract agreement. Hada's position, however, was that the reservoir in which the Carver No. 1 well was completed was, in fact, present and productive in Hudson's Saenz lease, even though it was above the 8,507 foot depth. Since the agreement said that pooling would occur only if the reservoirs above 8,507 feet were not present and not considered productive in the Saenz lease, Hada believed that he was justified in refusing to pool the Carver lease with the Saenz lease. Hudson contended that the reservoirs above the 8,507 foot depth were not present and not considered productive in his Saenz well.

Hudson then brought suit against Hada and Gill, seeking specific performance of the contract agreement and an accounting. Hudson later abandoned this claim for specific performance in favor of a claim for damages for breach of the contract. The jury, in answer to two special issues, found

that the reservoirs in which the Hada Carver No. 1 well was completed were not present and not considered productive in the Hudson Saenz lease. These findings, which were favorable to Hudson, are not challenged on appeal. The trial judge then entered judgment awarding Hudson an amount in damages based upon what he would have received had the Saenz tract been pooled with the Carver tract.

Appellants argue on appeal that this judgment was improper because the trial court granted judgment for damages when the pleadings supported only a plea for specific performance and an accounting. We agreed with the contention in our original opinion. They also argue that Hudson failed to establish an ownership interest in the Carver lease which appellants claim is essential to Hudson's recovery.

■ The appellee argues on motion for rehearing that he did plead sufficiently a cause of action for breach of contract in addition to his claim for specific performance and an accounting. In determining whether a cause of action was pled, the pleadings of the plaintiff must be sufficient for the trial court to be able, from an examination of the pleadings, to ascertain with a reasonable degree of certainty the elements of plaintiff's cause of action and the relief sought with sufficient information on which to base a judgment. *Stoner v. Thompson*, 578 S.W.2d 679 (Tex.1979).

■ The rule is that such a petition is to be construed liberally in favor of the pleader. *Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183 (Tex.1977). It is accepted that the court will look to the pleader's *intendment,* and a pleading will be upheld (absent an exception) even if some element of a cause of action has not been specifically alleged. *Gulf, Colorado & Santa Fe Railway Co. v. Bliss*, 368 S.W.2d 594 (Tex.1963). Where no special exceptions are filed in accordance with TEX.R.CIV.P. 90, a petition will be construed liberally in favor of the plaintiff's cause of action. *Roark v. Allen*, 633 S.W.2d 804 (Tex.1982). A party may plead in the alternative. TEX.R.CIV.P. 47 and

48, *University State Bank v. Gifford-Hill Concrete Corp.*, 431 S.W.2d 561 (Tex.Civ. App.—Ft. Worth 1968, writ ref'd n.r.e.).

■ Here, while appellee's pleadings do not contain specific language to indicate that he is pleading in the alternative for specific performance and breach of contract, following the above laid down rules, we find that appellee sufficiently pled a cause of action for the breach of contract cause of action. For instance, his petition in paragraph II stated that the lawsuit "involves the interpretation and *breach* of a Letter Agreement by and between Hudson and Gill." He further states in paragraph V in his petition that "Plaintiff has demanded that Hada include Hudson's 80 acres in a gas unit covering the Carver No. 1 Well in accordance with said written Agreements but Hada wrongfully refuses, *all to Plaintiff's damage in an amount far exceeding the Court's minimum jurisdictional amount."* (Emphasis ours.)

While Hudson's pleadings are not specific, appellant did not, at any time, except to the vagueness of the pleadings. As such, we must construe them liberally in Hudson's favor. *See Roark v. Allen*, 633 S.W.2d at 809. We now hold that a liberal construction of the pleadings supports a cause of action for breach of contract. Appellant's second point of error is overruled.

■ In appellant's first point of error, they claim that the trial court erred in rendering judgment in plaintiff's favor for damages when the judgment did not award, but denied, appellee any ownership interest in the Carver lease. The trial court did not award an interest in the Hada Carver lease to Hudson. The trial court, in awarding damages to Hudson, included in its judgment the phrase "all relief not granted herein is denied." The effect of this statement in a judgment is to expressly deny any relief not specifically granted. *See Schlipf v. Exxon Corp.*, 644 S.W.2d 453 (Tex.1982); *North East Independent School District v. Aldridge*, 400 S.W.2d 893 (Tex.1966). By including this phrase in its judgment, the trial court did, in effect,

deny Hudson's plea of specific performance.

Here, Hada and Gill contracted to drill a test well and to pool Hudson's 80 acres with another tract if the well was completed in a new reservoir. The contract also included the retention of a 20% revenue interest in the land assigned to the unit. The appellants performed a part of the contract by drilling a test well, but they refused to perform the part of the contract requiring them to pool. The jury answered special issues favorably to Hudson's position. The trial court granted judgment for Hudson for $125,329.15, plus interest, and for additional "amounts in cash equal to 5.46125% of total revenue received by 100% ownership for oil and gas produced from the Hada No. 1 Carver Well situated in Nueces County, Texas, each month, less 5.46125% of said well's total operating expenses or remedial work costs each month, computed each month from December 1, 1982 until said well is plugged and abandoned, payable on the first day of each month after the month of production, bearing interest at the rate of 9% per annum on all amounts not timely paid."

■ The general rule regarding damages when a breach of contract occurs is that the injured party should be compensated for damages or loss actually sustained. *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484 (1952); *North American Corp. v. Allen*, 636 S.W.2d 797 (Tex.App.—Corpus Christi 1982, no writ); *Copenhaver v. Berryman*, 602 S.W.2d 540 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). Damages for breach of contract seek to allow an injured party to have the value to him of the contract's performance.

■ Because the trial court did not grant specific performance in this case because of the absence of indispensable parties, it was incumbent upon the trial court to employ a means of ascertaining damages. The parties stipulated that Hada recovered all costs of drilling, completing and operating the test well on February 28, 1980. They also agreed that the total net income received for oil and gas produced from the Hada Carver No. 1 Well, beginning in March 1, 1980 and ending November 30, 1982, was $2,400,000.00. Another stipulation made by the parties was that the total operating expenses for the Hada Carver No. 1 Well, beginning on March 1, 1980 and ending November 30, 1982, was $105,693.22. Pursuant to the written agreement, Hudson would have been entitled to a 5.462615% revenue interest (20%) in the Hada Carver well, which would have entitled him to $125,329.14, had appellants not breached their agreement and pooling had taken place. The trial court also awarded future damages of 5.462615% of the total revenue received by 100% ownership for oil and gas produced from the Hada Carver No. 1 Well, less 5.462615% of the well's total operating expenses each month so long as the well produces. This amount would be their future interest, had the land been pooled. We find no error by the trial court in awarding these damages under the present pleading for breach of contract. The proper method for ascertaining the damages for future lost profits probably should have been presented by expert testimony. *See County Management, Inc. v. Butler*, 650 S.W.2d 888 (Tex. App.—Austin 1983, no writ). However, this was not raised by the parties as a point of error and is therefore waived. Appellant's first point of error is overruled.

■ In appellants' third point of error, they claim that the trial court erred in rendering judgment for the plaintiff since Hudson failed to plead and prove compliance with a condition precedent to their obligation to unitize the plaintiff's lease with their lease. The contract between the parties provided that:

"Upon completion of the test well, W.H. Hudson will assign you (Hada) a gross one hundred percent (100%) working interest ... in the oil and gas rights in the above described land (the Saenz lease), effective at the time and date you have recovered your costs of drilling, completing and operating the test well...."

A condition precedent may be either a condition which must be performed before an

agreement of parties shall become a binding contract or it may be a condition which must be fulfilled before a duty to perform an existing contract arises. *Hohenberg Bros. Co. v. George E. Gibbons and Co.,* 537 S.W.2d 1 (Tex.1976); *Perry v. Little,* 377 S.W.2d 765 (Tex.Civ.App.—Tyler 1964, writ ref'd, n.r.e.).

■ It is a rule of construction that a forfeiture by finding a condition precedent is to be avoided when possible under another reasonable reading of the contract. *Schwarz-Jordan, Inc. v. Delisle Construction Co.,* 569 S.W.2d 878 (Tex.1978).

Eugene Gill, one of the appellants herein, testified that, after the well had been completed, appellee's agent contacted him about putting Hudson's acreage in the unit. Gill testified that he forwarded the information to Hada, who had taken over the operation. Hada, through interrogatories, admitted that Hudson made demand to be included in the unit in accordance with the terms of the agreement. Appellee Hudson also testified that Hada refused the request to put the Saenz well in the unit.

■ We hold that the contractual provision in question was not a condition precedent, but part of the consideration for the contract. Appellants' third point of error is overruled.

In appellants' fourth point of error, they assert that the trial court erred in denying their request to include in the court's charge an instruction defining the term "reservoir." The term "reservoir" was used in both special issues submitted to the jury. Appellants claim that the term is a technical term, and it was necessary for the jury to properly understand what the term meant as it was used in the oil and gas industry. Appellant submitted six definitions of the term "reservoir" to the court, all of which were refused by the trial court.

■ Under TEX.R.CIV.P. 277, the trial court is required to give in its charge definitions of legal and other technical terms. *Shihab v. Express-News Corp.,* 604 S.W.2d 204 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.). The only function of an explanatory instruction is to assist the jury in answering the special issues submitted.

The trial courts have considerable discretion in deciding what instructions are necessary and proper when submitting issues to the jury. *Mobil Chemical Co. v. Bell,* 517 S.W.2d 245 (Tex.1974); *Scott v. Houston Independent School District,* 641 S.W.2d 255 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Appellants, by their requested instructions, intended to explain to the jury that a "reservoir" may contain oil, gas or both. Appellants' requested instructions explain that the two products, oil and gas, may exist in the same reservoir.

■ Testimony elicited from appellants' expert yielded the same information that they request in their instruction:

Q. And your experience, have you seen oil wells and gas wells producing from the same reservoir?

A. Many times, yes.

Q. Is that what we have here?

A. Pardon me?

Q. Is that what we have here?

A. Yes, you have one gas well in the gas phase of the reservoir, and in my estimation one well that is producing from both the gas and oil phase of the same reservoir.

We agree with appellant that the term "reservoir" as it was used here had a specific meaning in terms of the oil and gas industry. However, it was not error for the trial court to refuse to submit the instructions. Appellant's fourth point of error is overruled.

In points of error five and six, appellants assert that the trial court erred in submitting special issue number two to the jury over defendant's objection that it should not contain the term "considered." Appellants also claim error on the part of the trial court in submitting the issue without an instruction which defined the test whereby the jury would determine if the reservoir was "considered productive."

Special issue number two read as follows:

"Do you find from a preponderance of the evidence that the Hada No. 1 Carver Well is producing from a 'new' gas reservoir which, on December 14, 1978, was not considered productive in the Hudson No. 1 Saenz Well?"

The words "considered productive" are taken from the letter agreement between the parties. Appellant objected to the inclusion of the term *"considered"* and submitted another issue to the trial court, which was refused. The refused issue was similar to the issue submitted, except it deleted the word "considered." TEX.R.CIV.P. 279 reads, in part, that "Where the court has fairly submitted the controlling issues raised by such pleading and the evidence, the case shall not be reversed because of the failure to submit other and various shades of the same issue." Here, the issue which was requested was actually a variation of the issue that was submitted.

Appellants also requested an instruction regarding the words "considered productive," which was denied by the trial court. The requested instruction defined "considered productive" as productive of oil and gas or both, based upon geological and engineering data or other scientific data or tests. Again, the testimony at trial was largely that of experts whose testimony the jury heard. Since the term "considered productive" is not a legal term, the court was not required to submit the instruction. We find no abuse of discretion in its failure to do so. Appellants' fifth and sixth points of error are overruled.

In appellant's last point of error, they claim the trial court erred in failing to comply with TEX.R.CIV.P. 39(b) and reduce Hudson's damages by the percentage of the Carver lease owned by the indispensable parties whom the court refused to join.

We agree that, if the trial court had awarded an interest in the unit to Hudson, the damages would have had to be reduced by the proportionate amount owned by the appellants. However, the judgment here is against only Hada and Gill, jointly and severally, and does not in any way involve the other lease holders.

Appellee's motion for rehearing is granted. The judgment of the trial court is AFFIRMED.