**David CLANCY, Appellant,**

v.

**ZALE CORPORATION, Appellees.**

**No. 05–84–00625–CV.**

Court of Appeals of Texas, Dallas.

Feb. 19, 1986.

Rehearing Denied March 24, 1986.

Windle Turley, Linda Turley, Darrell Panethiere, Law Offices of Windle Turley, P.C., Dallas, for appellant.

Royal H. Brin, John E. Phillips, P. Michael Jung, Randal Mathis, Strasburger & Price, Dallas, for appellees.

Before SPARLING,[1] VANCE and GUILLOT, JJ.

GUILLOT, Justice.

David Clancy appeals from a take-nothing judgment in favor of appellees, Zale Corporation, Rogers Research and Development, Inc., the Arms Corporation of America, and Armsco Distributing Company and their subsidiaries (collectively referred to hereinafter as "Zale"). For the reasons below, we affirm the judgment of the trial court.

Clancy sought recovery against Zale and Kenneth Hacker for an injury he sustained while standing next to a parked car in which Hacker was playing with a .22 caliber Armsco revolver. The gun discharged striking Clancy in the neck and leaving him paralyzed. The jury found Hacker, a third-party defendant, negligent and assessed two million dollars in damages.

The jury returned a take-nothing verdict in favor of Zale on Clancy's strict liability claim. Clancy alleged that Zale was strictly liable for the design, manufacture, and sale of the Armsco revolver that wounded him. In particular, Clancy alleged that the gun was defective in its overall design and in lacking such safety devices as a hammer block or transfer bar. The jury found that the revolver was not defectively designed.

Clancy raises nine points of error which can be grouped into five categories:

(1) improper conduct of counsel;

(2) improperly submitted design defect issues;

(3) failure to give requested jury instructions;

(4) jury findings against the great weight and preponderance of the evidence; and

(5) failure to grant an evidentiary hearing on alleged jury misconduct.

Finding no error, we affirm the judgment of the trial court.

### I.

*Improper Conduct of Counsel*

In his first point of error, Clancy contends that improper conduct of defense counsel interjected irrelevant, inflammatory, and prejudicial issues into the trial by:

(1) violating the trial court's motion in limine concerning:

(a) the right to own a handgun;

(b) legislative actions concerning the sale, ownership, use and possession of handguns; and

(c) Clancy's use of alcohol and drugs;

(2) interjecting improper and prejudicial practices in questioning witnesses;

(3) informing the jury of the effect of their answers to special issues; and

(4) arguing facts contrary to all evidence of record.

Clancy's first point of error is clearly multifarious. A point of error is multifarious if it embraces more than one specific ground of error, or if it attacks several distinct and separate rulings of the court. *Ozuna v. Dyer Fruit Box Manufacturing Co.*, 606 S.W.2d 334, 337 (Tex.Civ.App.—Tyler 1980, no writ); and *Rio Delta Land Co. v. Johnson*, 566 S.W.2d 710, 713 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Here, Clancy complains of fifty-two (52) different instances of alleged attorney misconduct.

---

1. Justice Sparling concurred in the result reached prior to his resignation.

 This Court may disregard any assignment of error that is multifarious. *Citizens Building, Inc. v. Azios*, 590 S.W.2d 569, 572 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). Therefore, we overrule Clancy's first point of error.

## II.

### *Issue Submissions*

Clancy contends in his third and fourth points of error that the trial court erred in submitting the design defect issue to the jury in a manner which instructed them to assess the overall design of the product without regard to the absence of a hammer block or transfer bar, and, alternatively, in refusing Clancy's requested design defect issue, which asked the jury whether the handgun was unreasonably dangerous, taking into consideration the utility of the product's design, the risk involved in its use, and the manner in which it was marketed to the public. We cannot agree.

The trial court submitted the design defect issue as follows:

1. At the time the handgun was sold by Zale, was the handgun defectively designed:

(a.) Because it did not have a hammer block or transfer bar?

(b.) Because of its overall design as a handgun, without regard to the absence of a hammer block or transfer bar?

Answer each part separately. In answering part a, consider only whether the handgun was defectively designed because of the absence of a hammer block or transfer bar. In answering part b, consider whether the overall design of the handgun was defective apart from and without regard to the absence of a hammer block or transfer bar.

A "defectively designed" product is a product that is unreasonably dangerous as designed or developed, taking into consideration the utility of the product and the risk involved in its use.

Clancy contends that this is a disjunctive submission of the defective design issue which prevented the jury from considering the overall design of the product *including* lack of a hammer·block or transfer bar, in contravention of *Turner v. General Motors Corp.*, 584 S.W.2d 844, 847 (Tex.1979).

In *Turner*, the Texas Supreme Court delineated the proper issue submission for a design defect case:

Do you find from a preponderance of the evidence that at the time the [product] in question was manufactured by [manufacturer] the [product] was defectively designed?

The issue submitted in the instant case recites the same language as in *Turner*, but subdivides the issue to focus on the absence of a hammer block or transfer bar and the overall design of the handgun, excluding the absence of a hammer block or transfer bar.

Clancy submitted his cause for defective design based upon two separate theories: that the Armsco handgun was defectively designed in the absence of a hammer block or transfer bar, and that handguns in general are defectively designed due to the overall design of the gun including its size, concealability, cheapness, availability, and shortness of the barrel. The trial court properly drew the attention of the jury to Clancy's two theories for recovery. In fact, this disjunctive submission favored Clancy, by affording two possible theories upon which the jury could find the handgun defectively designed. Furthermore, the issue was not actually disjunctive because it did not limit the jury to one alternative or the other. The jury could have answered "yes" that the gun was defectively designed either because it lacked a hammer block or transfer bar or because of its overall design excluding the absence of a hammer block or transfer bar, or upon both theories. This submission afforded Clancy two opportunities for a finding of defective design and two bases for recovery should the jury also find producing cause. Under the broad submission propounded by Clancy, the jury's attention would not be focused on Clancy's independent theories of recovery.

■ A trial court has considerable discretion in the submission of special issues and may submit separate questions on each element of a case, or may submit the issues broadly. TEX.R.CIV.P. 277. The court is required to submit the disputed issues fairly, and its exercise of discretion will not be overturned absent a clear showing of abuse constituting a denial of rights that was reasonably calculated to cause, and did cause, the rendition of an improper verdict. *De Anda v. Home Insurance Co.,* 618 S.W.2d 529, 534 (Tex.1980); and *Line Enterprises v. Hooks & Matteson Enterprises, Inc.,* 659 S.W.2d 113, 116–17 (Tex.App. —Amarillo 1983, no writ). We hold that the trial court did not abuse its discretion in submitting this issue in two parts.

■ Clancy also contends in his fourth point of error that the trial court should have included in the definition of "unreasonably dangerous" an instruction for the jury to consider, along with the risk and utility of the handgun, the manner in which the handgun was marketed to the public. We disagree.

The trial court submitted the *Turner* definition of "unreasonably dangerous." *Turner,* 584 S.W.2d at 847. This definition instructs the jury to weigh the risk and utility of the product in determining whether the product is defectively designed. Finding no Texas authority, we will not expand the *Turner* definition to include a consideration of marketing techniques. Absent a showing of abuse of discretion or an improper verdict, we overrule Clancy's third and fourth points of error.

### III.

#### Submission of Instructions

In his second point of error, Clancy contends that the trial court erred in refusing to submit his requested instruction that the revolver's compliance with government standards is not a defense to this action. He bases his argument on Zale's continued references to the gun's meeting government standards. This point of error is not well taken.

■ To begin with, Clancy failed to preserve any alleged error below by either objecting to Zale's references to government standards or requesting an instruction or mistrial. *United States Fire Insurance v. Monn,* 643 S.W.2d 207, 209 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.); and *General Motors Corp. v. Grizzle,* 642 S.W.2d 837, 845–46 (Tex.App.—Waco 1982, writ dism'd w.o.j.). Furthermore, the judge, in his discretion, may have found that the requested instruction was unnecessary or confusing. Under rule 273 of the Texas Rules of Civil Procedure, the judge has wide discretion in submitting explanatory instructions. *Scott v. Houston Independent School District,* 641 S.W.2d 255, 257 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). We overrule Clancy's second point of error.

In his fifth point of error, Clancy alleges that the trial court erred in refusing to submit the instruction that, should the jury find that Clancy was injured by a defective product, then the burden would shift to Zale to justify the gun's design, balancing that design against the risk of harm presented. Clancy has not cited, nor have we found, any Texas cases that would support submitting such an instruction.

■ The only function of an explanatory instruction is to aid the jury in answering the submitted issues. *Jones v. McCoy,* 466 S.W.2d 667, 669 (Tex.Civ.App. —Eastland 1971, no writ). The judge, in his discretion, may have found that the requested instruction would not aid the jury. That was his prerogative. *Scott,* 641 S.W.2d at 257. Given the strong prejudice against extraneous instructions beyond those enumerated in the Texas Pattern Jury Charges for defective design cases, we hold that the trial court did not abuse its discretion in refusing to submit the requested instruction. *See, Accord v. General Motors Corp,* 669 S.W.2d 111, 116 (Tex. 1984); and *Fleishman v. Guadiano,* 651 S.W.2d 730, 731 (Tex.1983).

### IV.

#### Sufficiency of the Evidence

■ In his sixth and seventh points of error, Clancy alleges that the jury's an-

swers to issue 1(a), that the handgun was not defectively designed because it did not have a hammer block or a transfer bar, and to issue 1(b), that the handgun was not defectively designed because of its overall design, are against the great weight and preponderance of the evidence. We cannot agree.

*In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (Tex.1951) sets out our standard of review: we must examine all of the evidence and determine whether the jury's findings are so against the great weight and preponderance of the evidence as to shock the conscience, or are manifestly wrong and unjust. However, this court is not a fact finder, and, thus, we may not pass on the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached on the evidence. *Ryan v. Morgan Spear Associates, Inc.*, 546 S.W.2d 678, 685 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.).

### A. *Absence of a Hammer Block or Transfer Bar*

Clancy alleges that the Armsco revolver was defectively designed because it did not have a hammer block or a transfer bar. A hammer block prevents the hammer from hitting the firing pin and detonating the cartridge in the cylinder, so that the gun will not fire unless the hammer is fully cocked or the trigger is completely pulled. A transfer bar is attached to the trigger of the gun and transfers the blow from the hammer to the firing pin only when the trigger is pulled. Both devices, as well as other safety devices, are intended to prevent the accidental discharge of the firearm.

In issue 1(a), the jury was instructed to determine whether, taking into consideration the utility of the product and the risk involved in its use, the Armsco revolver was defectively designed because it did not have a hammer block or transfer bar. The jury found that the gun, absent a hammer block or transfer bar, was not defectively designed. We find sufficient evidence to support this finding.

Whether a product was defectively designed requires a balancing by the jury of the product's utility against the likelihood and gravity of injury from its use. *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 746 (Tex.1980). The jury may consider many factors before deciding whether the product's usefulness or desirability is outweighed by its risks, and the jury's finding on defectiveness may be influenced by evidence of safer designs that would have prevented injury. *Id.* Attention may become focused on the feasibility of a specific design feature and the capacity to provide the feature without greatly increasing the product's cost or impairing its usefulness. *Id.*

Clancy presented evidence that a safer alternative to the Armsco revolver is available and widely in use. One expert testified that the hammer block and transfer bar are well-established safety devices and that a gun marketed without either is unreasonably dangerous. Two police officers testified that most guns used by the Amarillo and Dallas Police Departments have either a transfer bar or hammer block. Finally, a firearms consultant testified that all of the guns he has designed contain hammer blocks or transfer bars.

In reply, Zale presented evidence that installing a hammer block or transfer bar would: (1) alter the size of the weapon; (2) increase weapon breakdown; and (3) greatly increase the cost of the gun.

Zale also presented evidence that, for safety purposes, the cylinder of the revolver contains seven rather than six chambers. Manufacturer's instructions direct the user to keep the seventh chamber empty and to keep the hammer on the empty chamber to prevent the gun from firing if dropped or struck. A firearms consultant and designer agreed that this feature would prevent the gun from firing when dropped and testified that, as a reasonably effective safety measure, this device was standard in early model revolvers. Also, a police officer testified that several officers carry guns with the hammer resting on an empty chamber as a safety device.

In addition, Zale's testimony established that this handgun requires seventeen pounds of pressure to pull the trigger while most double action revolvers require eight to twelve pounds, and that the Armsco revolver is too small to accommodate a hammer block or transfer bar without major structural changes. There was also evidence that people are generally aware of the dangers of guns and that in order to spin the cylinder, as Hacker was doing when the accident occurred, he must have pulled back on the hammer or pulled the trigger.

Reviewing all the evidence, we hold that the jury's answer to issue 1(a) is not against the great weight and preponderance of the evidence, nor is it manifestly unjust. Therefore, we overrule this point of error.

### B. *Overall Design*

■ The jury found in answering issue 1(b) that the handgun was not defectively designed because of its overall design as a handgun, without regard to the absence of a hammer block or transfer bar. Again, the jury was instructed to balance the utility of the Armsco revolver against the likelihood and gravity of injury from its use. *Boatland*, 609 S.W.2d at 746.

Clancy does not contend that the revolver is defective in its overall design. Instead, he contends that the unique design features of a snub-nosed handgun, such as the Armsco revolver, increase the likelihood of injury from use of the handgun far in excess of the gun's utility. Clancy alleges that the manner in which handguns are produced and marketed to be inexpensive, concealable, and readily accessible increases the risk associated with the use of such guns.

Clancy presented an impressive array of expert witnesses, including university professors and safety and firearms experts, who testified to a variety of facts concerning handguns *in general.* One expert testified that when handguns are available they will be used; that small, crudely-made guns can discharge accidentally; and that a teenager with a gun will more likely be reckless because teenagers often feel invulnerable. However, an expert also testified that of the 2.5 million handguns sold annually for the past five or six years, no statistics are available to show how many are inexpensive, poorly-made weapons.

Another expert testified that while seventy-one percent of those who buy guns claim self defense as their motive, evidence shows that guns have no real self-defense value because: nine of ten residential burglaries occur when no one is home, in only two of a thousand burglaries can a homeowner deter crime by having a gun, and handguns are likely to be stolen from homes.

Finally, Clancy presented evidence that handguns are only useful for shooting another person; that they are easily concealed; that concealability fosters the improper and criminal use of handguns; and that when guns are more available, more deaths occur. As the jury heard from one expert, this type of short-barreled gun is used most often in violent attacks; five times as many deaths occur from guns as from knives; and out of approximately 80,000 annual gunshot wound cases, eighty percent involve handgun wounds.

In reply, one of Zale's experts testified that most people buy handguns for self-defense; that those who use guns or knives in self-defense are less likely to have crimes completed against them; and that an estimated 380,000 handgun owners are burglarized each year while at home and awake. He also stated that handguns inspire feelings of security and safety, adding that inexpensive handguns provide affordable protection to lower income individuals who are the most frequent victims of crime.

Another expert for Zale testified that handguns are purchased primarily for protection and that less than one percent of the handguns manufactured are involved in homicides, suicides, and accidents. He also testified that, because of the high incidence of violent crime among the poor, they have the greatest need for handguns as protec-

tion and that owning a handgun can create a sense of security.

Reviewing all of the evidence, we cannot say that the jury's answer to issue 1(b) is against the great weight and preponderance of the evidence or manifestly unjust. We overrule Clancy's seventh point of error.[2]

## V.

### Jury Misconduct

In his eighth and ninth points of error, Clancy alleges that the trial court erred in denying his motion for an evidentiary hearing when juror misconduct was alleged and supported by affidavits, and that the trial court erred in failing to order a new trial based upon the alleged jury misconduct. We cannot agree.

Rule 327(a) provides: "When the ground of a motion for new trial, supported by affidavit, is misconduct of the jury ... the court shall hear evidence thereof from the jury or others in open court...." TEX.R. CIV.P. 327(a). Rule 327(a) mandates that the trial court hear evidence of the alleged misconduct if the evidence is properly presented. *Elston v. Sherman Coca-Cola & Dr. Pepper Co.*, 596 S.W.2d 215, 217 (Tex.Civ.App.—Texarkana 1980, no writ).

The Texas Supreme Court in *Roy Jones Lumber Co. v. Murphy*, 139 Tex. 478, 163 S.W.2d 644, 646 (Tex.1942), set out the following rules for the proper submission of rule 327(a) affidavits:

> (1) if affidavits are attached to the motion showing material jury misconduct, it is reversible error for the trial court to refuse to hear testimony on the motion; (2) or, if the motion discloses a reasonable explanation and excuse as to why affidavits cannot be secured and exhibited, in connection with sufficient allegations of material jury misconduct, it is likewise reversible error to decline to

hear testimony on the motion; but (3) in the absence of such affidavits, or a reasonable excuse for not exhibiting the same, a refusal to hear testimony from the jurors on the motion is a matter within the sound discretion of the trial judge.

Here, Clancy's motion for new trial was not accompanied by proper affidavits or a reasonable excuse for their absence.

Clancy submitted the affidavit of one juror, four affidavits of counsel, and three newspaper articles with his motion for new trial and his motion for an evidentiary hearing. The newspaper accounts fail to meet the affidavit requirement because they are unsworn hearsay. *See,* TEX.R.EVID. 801(a). Likewise, the affidavits of counsel do not satisfy the requirements of rule 327(a). An affidavit by a non-juror is insufficient to establish material jury misconduct because the affidavit is based upon hearsay. *Tenngasco Gas Gathering Co. v. C.E. Fischer*, 624 S.W.2d 301, 305 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and *Cortez v. Medical Protective Co. of Fort Wayne*, 560 S.W.2d 132, 137 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.).

The only affidavit submitted by a juror quotes the foreman of the jury as stating: "... we could not try the law or change the law.... We could not penalize Zale and Armsco for doing something within the law." In his affidavit, the juror also states that "during our deliberations there was a major discussion" about the sale having been legal; that the jury did not balance the risk against the utility of the handgun; and that the jury discussed paint thinner and concluded that a manufacturer should not be sued because a teenager sustains brain damage from sniffing paint thinner. All such statements are inadmis-

---

**2.** In unrelated arguments included in this point of error, Clancy alleges that he should have been allowed to admit into evidence similar Armsco revolvers and evidence of suicides and other crimes involving handguns. Clancy has not, however, properly raised these alleged errors in separate points of error. Absent fundamental error, this court can only consider questions of law raised by separate points of error. *Cox v. BancOklahoma Argi-Service Corp.*, 641 S.W.2d 400, 404 (Tex.App.—Amarillo 1982, no writ).

sible to show alleged jury misconduct under TEX.R.EVID. 606(b).

Rule 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

Clancy alleges that the affidavit testimony fits within the "outside influence" exception to rule 606(b). We cannot agree.

Although neither Clancy nor Zale have cited any Texas cases construing the "outside influence" exception, cases under the corresponding exception contained in FED. R.EVID. 606(b) demonstrate that an "outside influence" must originate outside the jury. *Wiedemann v. Galiano*, 722 F.2d 335, 337 (7th Cir.1983) (tampering with evidence by an attorney); *United States v. Williams*, 613 F.2d 573, 575–76 (5th Cir.), *cert. denied*, 449 U.S. 849, 101 S.Ct. 137, 66 L.Ed.2d 60 (1980) (conversation between the judge and a juror); and H.R.Rep. No. 650, 93rd Cong., 2d Sess., *reprinted in* 10 J. Moore & H. Bendix, *Moore's Federal Practice*, 606.01[2] (2d ed. 1985) (a threat to a juror). By the very wording of rule 606(b), we hold that an "outside influence" on the jury must emanate from outside the jury and its deliberations.

In contrast, failure to properly understand or apply the court's charge is not jury misconduct. *Whited v. Powell*, 155 Tex. 210, 285 S.W.2d 364, 367 (Tex.1956). Nor is it misconduct where a finding is questioned based upon the jury's illogical reasons or erroneous conclusions from the evidence. *Cortez*, 560 S.W.2d at 137.

The affidavits of Clancy's attorneys and the newspaper articles are not admissible evidence of alleged jury misconduct, and Clancy has failed to show a reasonable excuse as to why admissible affidavits could not be secured. The only juror affidavit discusses jury deliberations, inadmissible under rule 606(b). Furthermore, Clancy has presented no admissible evidence of any outside influence on the jury. Therefore, we hold that the trial court did not abuse its discretion in denying Clancy an evidentiary hearing and in denying Clancy's motion for new trial.

We overrule Clancy's nine points of error and affirm the judgment of the trial court.