NO. 12-02-00016-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


§
 APPEAL FROM THE 

THE STATE OF TEXAS

FOR THE BEST INTEREST
§
 COUNTY COURT AT LAW OF

AND PROTECTION OF C.S.,

§
 CHEROKEE COUNTY, TEXAS

 

 Appellant C.S. appeals from a judgment ordering his commitment for extended inpatient
mental health services pursuant to Tex. Health & Safety Code Ann. § 574.035 (Vernon Supp.
2002). After a hearing, the trial court ordered C.S. committed to Rusk State Hospital for a period
of time not to exceed 365 days. In two issues, C.S. challenges the legal and factual sufficiency of
the evidence. We reverse the judgment and vacate the order of commitment.


Background


 On November 29, 2001, Regina Brown filed an Application for Court-Ordered Extended
Mental Health Services with the County Clerk of Cherokee County, Texas. The application stated
that C.S. was mentally ill and that he met the criteria in section 574.035 of the Texas Mental Health
Code for court-ordered extended mental health services. On that same date, the trial court signed
an order of protective custody; consequently C.S. was already a patient at Rusk State Hospital at the
time of the hearing.

 The jury trial on the proposed commitment was held on December 20, 2001. The jury
answered in the affirmative that C.S. was mentally ill, that he was likely to cause serious harm to
himself, that he was likely to cause serious harm to others, and that if not treated, he would continue
to suffer severe and abnormal mental, emotional, or physical distress, would continue to experience
deterioration of his ability to function independently, and would be unable to make a rational and
informed decision as to whether or not to submit to treatment. After considering the jury's verdict,
the court ordered that C.S. be committed for court-ordered extended mental health services at Rusk
State Hospital as an inpatient for no longer than a year. 


Burden of Proof and Standard of Review

 Section 574.035 of the Texas Health and Safety Code contains the criteria for court-ordered
extended inpatient mental health services. The court may order a proposed patient to receive
extended inpatient mental health services only if the fact finder concludes from clear and convincing
evidence that the proposed patient is mentally ill and also meets at least one of the additional criteria
set forth in section 574.035(a)(2). Specifically, subsection (a)(2) provides the factfinder must
conclude that as a result of mental illness, the proposed patient



 is likely to cause harm to himself;
 is likely to cause serious harm to others; or


 

 is:


 (i) suffering severe and abnormal mental, emotional, or physical
distress;


 (ii) experiencing substantial mental or physical deterioration of the
proposed patient's ability to function independently, which is
exhibited by the proposed patient's inability, except for reasons
of indigence, to provide for the proposed patient's basic needs,
including food, clothing, health, or safety; and


 (iii) unable to make a rational and informed decision as to whether or
not to submit to treatment.


Tex. Health & Safety Code Ann. § 574.035(a)(2) (Vernon Supp. 2002). Also under section
574.035, the proposed patient's condition must be expected to continue for more than ninety days,
and he must have already received court-ordered inpatient mental health services for at least sixty
consecutive days during the preceding twelve months. Id. at (a)(3), (a)(4). 

 The State has the burden of establishing by clear and convincing evidence that the proposed
patient meets at least one of the additional criteria listed in section 574.035(a)(2). Mezick v. State,
920 S.W.2d 427, 430 (Tex. App.--Houston [1st Dist.] 1996, no writ). "Clear and convincing
evidence" is an intermediate standard, falling between the preponderance of the evidence standard
of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. State v.
Addington, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam). The Texas Supreme Court has defined
"clear and convincing evidence" as "that degree of proof which will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought to be established." 
Addington, 588 S.W.2d at 570. When court-ordered extended mental health services are sought, an
additional requirement for clear and convincing evidence is imposed. To be clear and convincing
under subsection (a), the evidence must include expert testimony and, unless waived, evidence of
a recent overt act or a continuing pattern of behavior that tends to confirm



 the likelihood of serious harm to the proposed patient or others; or



 (2) the proposed patient's distress and the deterioration of the proposed patient's ability
to function.



Tex. Health & Safety Code Ann. § 574.035(e) (Vernon Supp. 2002). The clear and convincing
standard does not alter the appropriate standard of review. In re Caballero, 53 S.W.3d 391, 395
(Tex. App.--Amarillo 2001, pet. denied). 

Sufficiency of the Evidence 

 In reviewing a no evidence point, we must consider only the evidence and inferences that
tend to support the jury's verdict, disregarding all contrary evidence and inferences. See Wal-Mart
Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998). We may only sustain a "no evidence"
point when the record discloses one of the following: (1) there is a complete absence of evidence of
a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only
evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than
a mere scintilla of evidence, or (4) the evidence establishes conclusively the opposite of a vital fact. 
See Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). It is not
within our power to second guess the factfinder unless only one inference can be drawn from the
evidence. See Havner v. E-Z Mart Stores, Inc., 825 S.W.2d 456, 461 (Tex. 1992). If there is more
than a scintilla of evidence to support the finding, the evidence is legally sufficient. See Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex. 1993). 

 When conducting a factual sufficiency review, this court must consider all of the evidence,
including any evidence contrary to the verdict. Plas-Tex. Inc. v. U.S. Steel Corp., 772 S.W.2d 442,
445 (Tex. 1989). We must reverse on the basis of a factual insufficiency or great weight and
preponderance point if the court's finding is so against the great weight and preponderance as to be
manifestly unjust. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). Findings of fact are
the exclusive province of the factfinder. Bellefonte Underwriters Ins. Co. v. Brown, 704 S.W.2d
742, 744 (Tex. 1986). This court is not a factfinder and may not pass on the credibility of the
witnesses or substitute its judgment for that of the trier of fact, even if a different answer could be
reached on the evidence. See Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988); Clancy v. Zale
Corp., 705 S.W.2d 820, 826 (Tex. App.-Dallas 1986, writ ref'd n.r.e.).

The Evidence

 Upon direct examination, Dr. Harry Thompson testified that he examined and treated C.S.
and that he diagnosed his patient as schizophrenic, paranoid type, continuous, with prominent,
negative symptoms. Dr. Thompson stated that he did not believe that C.S. was likely to cause
serious harm to himself. However, he opined that C.S. was likely to cause serious harm to others
if he did not receive treatment for his mental illness. Specifically, he spoke of C.S.'s desire for
revenge against a group of people in Chicago who had done him harm and were continuing to harm
him. Dr. Thompson expressed his belief that the people from Chicago were a manifestation of C.S's
ongoing delusion of twenty years. C.S. had also shown a hatred of black people, he himself being
African American. He held a deep-seated desire for vengeance against the black race, which he had
expressed in writing for a very long time. The most recent letter had been written just five days prior
to trial. Dr. Thompson referred to each letter as an "overt act," and the combination of these letters
as a "continuing pattern of behavior." Dr. Thompson further stated that C.S. formed sexually
inappropriate attachments to women. 

 In regard to C.S.'s mental deterioration of his ability to function independently, Dr.
Thompson stated that C.S. denied that he was mentally ill, and that he refused to cooperate in
receiving treatment after discharge. Dr. Thompson also testified that if C.S. did not receive
treatment, a relapse would occur, and there would be a deterioration, through the psychosis, of such
things as his ability to care for himself. 

 Dr. David Self next testified, stating that C.S. suffered from schizophrenia of the paranoid
type. He had come to the conclusion that C.S. should be hospitalized because he posed a likelihood
of causing serious harm to others. Dr. Self read excerpts from C.S.'s letters. "If I were a n_ _ _ _
_, I'd be concerned and alarmed about the hate one Jew has for their sick a_ _ _ _. The world will
take note of my actions against the world's n _ _ _ _ _, with the American n_ _ _ _ _ going first. I'll
kick it all off in grand style." C.S. also indicated that he would not be satisfied until he dealt his
"final blow to n_ _ _ _ _ _." 

 Carole Reichert, a social worker at Rusk State Hospital, but who was not on C.S.'s treatment
team, testified next. She stated that C.S. sent her some letters which caused her to feel
"uncomfortable." 

Analysis

 We find no evidence that C.S. was likely to cause serious harm to others as a result of his 
mental illness. Though the expert medical witnesses acknowledged that this was a possibility, they
could not cite a single incident when C.S. had assaulted another person. And the likelihood that he
ever would seems remote considering the longevity of his anger and hatred without having acted
upon it. Bare psychiatric expert opinion of a potential danger to others is insufficient to support a
commitment. In re C.O., 65 S.W.3d 175, 181 (Tex. App.-Tyler 2001, no pet.). 

 Also, Dr. Thompson's testimony that C.S. refused to cooperate in receiving treatment and
that he would relapse if he was discharged from the hospital was not sufficient to satisfy the
evidentiary requirement of a recent overt act or a continuing pattern of behavior that tends to confirm
"the proposed patient's distress and the deterioration of the proposed patient's ability to function." 
See Johnston v. State, 961 S.W.2d 385, 389 (Tex. App.-Houston [1st Dist.] 1997, no writ)(auditory
hallucinations, disorganized and paranoid thinking, and repeated refusal to take medication
insufficient); Broussard v. State, 827 S.W.2d 619, 622 (Tex. App.-Corpus Christi 1992, no writ)(six
or seven prior hospitalizations, psychotic and hostile behavior, and repeated refusals to take
medication insufficient); In re P.W., 801 S.W.2d 1, 3 (Tex. App.-Fort Worth 1990, writ
denied)(delusional behavior, questions about suicide, and destruction of own personal property
insufficient). 

 Because the State did not meet its burden in proving one of the criteria of Tex. Health &
Safety Code Ann. § 574.035(a)(2) (Vernon Supp. 2002), we hold that the evidence is legally 
insufficient to support court-ordered extended mental health services. It is therefore unnecessary that
we address the factual sufficiency of the evidence. 

 Accordingly, we reverse the judgment and vacate the order of commitment. 


 JIM WORTHEN 

 Justice


Opinion delivered September 18, 2002.

Panel consisted of Gohmert, Jr., C.J., Worthen, J., and Griffith, J.






























(DO NOT PUBLISH)