Chester R. WEST, Appellant,

v.

Audria WATKINS, Guardian of the person and Estate of William Cotter, an incompetent, Appellee.

No. 16268.

Court of Civil Appeals of Texas, San Antonio.

Jan. 30, 1980.

Rehearing Denied March 5, 1980.

Edward J. Mihalko, San Antonio, for appellant.

Gary W. Shank, Floresville, for appellee.

OPINION

KLINGEMAN, Justice.

Chester R. West appeals from a judgment canceling a deed of trust and deed signed by appellee, William N. Cotter, to West, conveying a tract of one hundred (100) acres of land in Wilson County, Texas, owned by Cotter, and awarding Cotter $940.00 in actual damages and $10,000 exemplary damages. Trial was to a jury who in answer to the special issues here involved found that: (1) on the dates when the deed of trust and deed in question were executed by William Cotter he did not have sufficient mental capacity to understand the nature and effect of such instruments and the con-

sequences of his acts when executing the same; (2) at the time such instruments were executed Chester R. West knew that William Cotter did not have sufficient mental capacity to understand the nature and effect of his acts when executing such instruments; (3) William Cotter sustained actual damages in the amount of $940; and (4) William Cotter was entitled to exemplary damages against West in the amount of $47,500.

By eighteen points of error West complains that the trial court erred in (a) overruling his motion for instructed verdict, motion for judgment, motion to disregard special issue findings, and motion for judgment non obstante veredicto; (b) canceling the deed of trust and warranty deed; (c) granting judgment on the jury's findings to Special Issues Nos. 1, 2, 3, 4 and 7 because there was either no evidence to support such findings, or the evidence was insufficient to support such findings, or the findings were against the great weight and preponderance of the evidence.[1]

None of West's points of error complain of the amount of damages awarded, nor does West have any points of error complaining of the court's charge or of the form of the special issues submitted. One of appellant's points of error complains of the sufficiency of the pleadings to support the judgment canceling the deed and deed of trust. The rest of West's points of error are legal insufficiency or factual insufficiency points of error.

Under West's points of error, it is necessary for us to read and consider all of the evidence, which we have done. In deciding a "no evidence" point of error we

---

1. Special Issue No. 1 inquires whether William Cotter had sufficient mental capacity to understand the nature and effect of the deed of trust and the consequences of his act when executing the same. Special Issue No. 2 inquires whether, at the time of the execution of such deed of trust, West knew that William Cotter did not have sufficient mental capacity to understand and know the nature and effect of his act when executing the deed of trust. Special Issue No. 3 inquires whether at the time of the execution of the warranty deed William Cotter

had sufficient mental capacity to understand the nature and effect of the warranty deed and the consequences of his act in executing the same. Special Issue No. 4 inquires whether at the time of the execution of the warranty deed West knew that William Cotter did not have sufficient mental capacity to know and understand the nature and effect of his act when executing the warranty deed. Special Issue No. 7 inquires whether William Cotter is entitled to exemplary damages against West.

must view the evidence in its most favorable light in support of the finding and we must consider only the evidence and inferences which support the finding in question and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Lucas v. Hartford Accident and Fire Insurance Company*, 552 S.W.2d 796, 797 (Tex.1977). It is fundamental that the fact finding must be upheld if there is more than a scintilla of evidence in support thereof. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263, 265 (Tex. 1974).

When reviewing West's factual insufficiency points of error, we must consider all the evidence, and if the evidence supporting the finding is so weak, or the evidence to the contrary is so overwhelming, then the finding should be set aside. See *Garza v. Alviar, supra*; *In re King's Estate*, 150 Tex. 622, 244 S.W.2d 660 (1952); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 359 (1960); Garwood, *The Question of Insufficient Evidence on Appeal*, 30 Tex.L. Rev. 803 (1952).

In view of the nature of the points of error, we will summarize in some detail the pertinent evidence. The deed and deed of trust involved were executed by William N. Cotter and Jennings Cotter, and cover 200 acres, 100 acres of which belongs to William, and 100 acres to Jennings. The ownership of these tracts is separate. William and Jennings Cotter are brothers and live together on other lands. Both are single and elderly. After the execution of such instruments, but prior to the trial, Audria Watkins was appointed guardian of the person and estate of William Cotter, an incompetent, and this suit was brought by the guardian.

The defendant, Chester West, testified in some detail. He resides in San Antonio, and stated that he first met the Cotters in 1976 when hunting on their home property. It appears from testimony that most of his dealings were with Jennings Cotter, and that on various occasions he took Jennings to the doctor and occasionally carried him to the grocery store. He testified that Jennings Cotter contacted him wanting to borrow $625 to pay some bills. When he made the loan, he did not know about the land here involved. He stated that the money borrowed was to be repaid in four months with interest at the rate of ten per cent per annum. In connection with such loan he picked up Jennings Cotter and brought him to an attorney in San Antonio who prepared the deed of trust and that, thereafter, they picked up William and went to the office of Mrs. Cornelia Frazier, a justice of the peace in Wilson County, Texas. He stated that he did not talk to William; that the deed of trust was signed and acknowledged by both the Cotters, but that the date of the acknowledgment was changed by Mrs. Frazier from July 29, 1976, to July 30, 1976.

West further testified that the deed of trust was filed for record on December 6, 1976, because the Cotters were avoiding payment. No note was prepared with the deed of trust. When they went to Mrs. Frazier to sign and acknowledge the deed of trust, Mrs. Frazier did not ask the Cotters any questions. Thereafter, they took William home and he and Jennings went to pay taxes. At the tax office he gave Jennings $550 cash, $25 went to the attorney, and Jennings agreed to give West $50 for the trips he made. West testified that when the loan became due he asked for payment and told them he might have to sell the land. Jennings told him he needed a little additional loan and West told him he had to give West a deed, and Jennings asked West to have the deed prepared, which he did. He brought the deed to Jennings; they then picked up William. They again went to Mrs. Frazier's office, who asked the Cotters if they knew what they were signing to which they said "Yes." An additional $110 was paid to Jennings when they left Mrs. Frazier's office, after deducting West's expenses for all the trips he had made.

West was again called to testify later in the trial by his attorney. He stated that he never intended to defraud the Cotters. Pri-

or to the date the deed was signed Jennings wanted to borrow another $100 and he told Jennings only if a deed was signed. He testified that he and Jennings went to San Antonio where the deed was prepared but that Jennings did not go to the lawyer's office. He stated that when the warranty deed was signed, it was not folded as earlier testimony had indicated. At this time he gave Jennings $110, except for $20 which he kept as payment for an almost new pair of shoes he gave William. In his opinion William was normal, understood what was asked him and was responsive. On cross-examination, he said that the Cotters were close friends of his, that he carried them around and that Jennings told him that he was dependent on West. West said that he trusted them and they trusted him. Some "arm twisting" was necessary, he said, before he would accept the $20 for the shoes which had not been used very much. The Cotters were in their right mind when they signed the warranty deed. They instructed him to draw up the instrument properly and relied on him.

Mrs. Frazier, the notary who took the acknowledgments on both instruments, also testified in some detail. She said that prior to the time West brought the Cotters to her office in July of 1976 she had never met William. At this time West came into the office, first by himself and told her that everything had been agreed upon and that she was not to ask any questions. When William Cotter came in she noticed that William had difficulty in walking by himself. She did not talk to him, but when she requested that the Cotters sign the deed of trust, Jennings had to help William. She testified that at such time William did not seem to realize what he was doing.

Mrs. Frazier further testified that after this occasion, the next time she saw the Cotters was in the early part of January, 1977. West first came in to her office by himself, and handed her a folded instrument and told her not to ask any questions. The Cotters came in a few minutes later and William had to be helped into her office. William appeared to be ill but she did not converse with him. The Cotters then signed the deed and left. She did not properly acknowledge this instrument because she did not think William Cotter knew what he was doing. The parties again returned to her office on that same day to sign another paper. She did not know exactly what this instrument was and did not ask any questions before acknowledging it properly. Two warranty deeds from Jennings and William Cotter to West covering the property here involved were introduced into evidence. Both deeds are dated January 13, 1977, and are identical except that one is unrecorded and the acknowledgment of the Cotters on this deed is not properly filled out in several respects. The other deed is recorded and the acknowledgment is properly filled out. Mrs. Frazier testified that on the occasions when the Cotter brothers were in her office she did not discuss with the Cotter brothers what was in the instruments and never read any portions of such instruments to them.

William Cotter testified that when West and Jennings Cotter came to visit him in July of 1976 they brought some papers for him to sign but did not discuss anything with him. They then went to Mrs. Frazier's office and signed some papers in her presence. He did not know what he was signing, was asked no questions, and did not read the papers. Thereafter, West gave Jennings some money but he did not receive any money. He stated that he did not know what happened but did not intend to sell his property. He further testified that in January of 1977 West again came to pick them up and took them to Mrs. Frazier's office where West gave the instruments to Mrs. Frazier and that on this occasion he had a "swimmy head." On cross-examination when asked to read certain instruments, he guessed at the words getting most of them wrong. On recross, he stated that he thought that the land that he owned was worth about $600 an acre.

Jennings Cotter on direct examination testified that he first met West when West carried him home from the Veterans' Hospital. He did not remember what year he discussed the loan with West, but that it

was in the amount of $625. The only paper signed by him was a lien which was drawn up by West. He was not with West when the papers were drawn up and did not know the name of the lawyer. He read the instrument involved and thought it was a lien and he acknowledged the instrument before Mrs. Frazier.

Jennings testified that he did not discuss with his brother William what was going to happen. He did not get the entire $625. Later he got an additional $100, after he signed the purported deed; but he never discussed this transaction with William either. He did not know that he had signed a warranty deed and he never intended to sell the 100-acre tract owned by him. At the times they went to Mrs. Frazier's office there was no discussion. He said that the present value of his tract is about $60,000 but that in 1977 it was worth about $450–$500 per acre. On cross-examination, his testimony became somewhat contradictory. He seemed reluctant to discuss the 1977 transaction. He said there was nothing wrong with William and that in January, 1977, when West picked them up all three discussed this transaction. He reiterated that he thought the instrument signed was a lien, not a warranty deed.

The other testimony was by witnesses who were not connected with the transactions in question. A real estate dealer in the Wilson County area testified with regard to the property involved stating that the market value of the land involved was about $475 per acre. A banker from Stockdale who knew the Cotters testified that Jennings on occasion had borrowed money from the bank. He first met William in 1972 when he and Jennings were in his office. At that time he wondered whether William was operating with all of his "mental faculties" because he seemed child-like. He said he occasionally saw William thereafter at the bank. In his opinion, the fair annual rental value of the property involved was $10 per acre.

The County Judge of Wilson County testified that he had known the Cotters all of his life. Jennings carried on most of the business and, in his opinion, he did not think William had the capacity to transact any business involving land. A Mr. Gann testified that he lived in the same community with the Cotters and knew them both. In his opinion, William did not have the capacity to make any land transactions. At one time he discussed the possibility of leasing the land for oil, but based upon advice of his attorney, he did not take the lease. In the fall of 1977, he had leased William's tract for deer hunting, but when he attempted to go on the place there was a different lock. Thereafter, West told him that the property was in his name, and when Gann checked on the records, he found the deed here involved. When he discussed this with William, William said he did not sell it and went to pieces. Jennings was there but said nothing. He felt that William was capable of handling simple business transactions, but not anything as complicated as selling his land.

Audria Watkins was appointed guardian of the person and estate of William Cotter, incompetent, prior to the filing of this suit. He had known William Cotter all of his life. His opinion of William was that he was slow and could not comprehend questions and answers very well.

John West, a brother of Chester, testified that he bought some farm products from William Cotter, and that he had no difficulty in making himself understood. He did not think that William was mentally retarded and could carry on a normal conversation. A neighbor of Chester West testified that he had visited William Cotter on several occasions in 1976 and 1977 and had bought some honey from him. He had no difficulty in making himself heard or understood and he felt that there was nothing wrong with William.

Gabriel Hollis is a physician specializing in psychiatry. He testified that William came to him for examination and except for being hard of hearing, his health was good. He had some difficulty in orientation; he was easily distracted, but as long as things were kept simple he could make a decision. His insight was not complete and William

knew something was wrong but not the extent of it. He said that, while William could make simple decisions, he did not have the present capacity to represent his best interests. William had a "non-psychotic organic brain syndrome, mild, associated with senile brain disease." Cotter had some understanding of matters and probably could make a simple decision unassisted. In reference to complicated business, however, such as properly administering his property, he needed assistance. He no longer understands the fine technicalities and full consequences of his acts. The doctor was shown a warranty deed and, after he examined it, stated that William might understand it if it was explained to him line by line and word by word.

■ It is evident from an examination of the evidence, that there is more than a scintilla of evidence to support the jury's findings in question. We have, heretofore, set forth applicable rules of review pertinent to "no evidence" points of error, and, in applying such rules to the record before us, we have concluded that West's "no evidence" points of error are without merit. All of such points of error are overruled, including those that the trial court erred in refusing to grant an instructed verdict, motion to disregard special issue findings and motion for judgment n. o. v. *Dodd v. Texas Farm Products Company*, 576 S.W.2d 812, 814 (Tex.1979); *Leyva v. Pacheco*, 163 Tex. 638, 641, 358 S.W.2d 547, 550 (1962); *Burt v. Lochausen*, 151 Tex. 289, 299, 249 S.W.2d 194, 199 (1952); *Cross v. City of Dallas*, 581 S.W.2d 514, 515 (Tex.Civ.App.—Dallas 1979, writ ref'd n. r. e.); *Overstreet v. Gibson Product Co., Inc., of Del Rio*, 558 S.W.2d 58, 59 (Tex.Civ.App.—San Antonio 1977, writ ref'd n. r. e.); *Hardy v. C.P.I. Sales, Inc.*, 511 S.W.2d 89, 94 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ); 3 R. McDonald, *Texas Civil Practice* §§ 11.25 and 11.28 (rev. 1970).

It is equally clear from an examination of all the evidence that there is ample evidence to support all the jury's findings complained of. West's points of error complaining of factual insufficiency of the evidence, including those asserting that the jury's findings are against the great weight and preponderance of the evidence, are overruled.

■ West also contends that the pleadings are not sufficient to support a judgment of cancellation of the deed and deed of trust. The main thrust of his contention is that the prayer cannot be looked to in determining the relief sought. We disagree. We have carefully reviewed the pleadings on which plaintiff went to trial. The petition specifically alleges that, at the time of execution of the instruments here involved, William Cotter was mentally incompetent; that false representations were made by West as to the nature of the instruments; that the consideration was so grossly inadequate as to constitute fraud; that West had been requested by Cotter to reconvey the property to him, which West has failed and refused to do; and that the acts complained of were willful, intentional, unlawful and malicious. The prayer specifically asks that the deed and deed of trust be canceled and declared null and void as to William Cotter's property. There is also a prayer for general relief. The pleadings as a whole are clearly sufficient to support the judgment of cancellation of such instruments.

All of West's points of error have been considered and all are overruled. The judgment of the trial court is affirmed.