Shead v. Clark/Kyser 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-201-CV





OVATION HOMES, INC. AND LELDON W. SHEAD,




 APPELLANTS


vs.





CLARK/KYSER WHOLESALE LUMBER, INC. AND JOHN DUNLAP,




 APPELLEES


 




FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT



NO. 88-452-C, HONORABLE WILLIAM LOTT, JUDGE PRESIDING



 





PER CURIAM



 This appeal by writ of error involves actions for breach of contract and misapplying
trust funds based on a construction contract. See Tex. Prop. Code Ann. §§ 162.001-.032 (West
1984 & Supp. 1993) ("Code"). Appellant Ovation Homes, Inc., contracted to build a house for
appellee John Dunlap. Appellee Clark/Kyser Wholesale Lumber, Inc., supplied lumber to
Ovation. After Ovation failed to pay for the lumber, Clark/Kyser sued Ovation on its contract
and sued Dunlap on its materialmen's lien. Dunlap cross-claimed against Ovation and filed a
third-party petition against Ovation's president, Leldon Shead. In succeeding pleadings,
Clark/Kyser named Shead as a defendant and omitted Dunlap as a defendant. Neither Ovation
nor Shead appeared for trial, though both had filed answers in the case. After a bench trial, the
court rendered judgment against Ovation and Shead and in favor of both Clark/Kyser and Dunlap. 
Ovation and Shead appeal by writ of error.

 Appellants Ovation and Shead assert three points of error on appeal. Each of these
points is multifarious because it embraces more than one specific ground of error. Clancy v. Zale
Corp., 705 S.W.2d 820, 823 (Tex. App.--Dallas 1986, writ ref'd n.r.e.). Although we may
disregard multifarious points of error, we will nevertheless address each one. Id. at 824. We will
affirm the trial court's judgment.

 In point of error one, appellants allege that several errors occurred in the trial court
which entitle them to a new trial. Appellants first argue that, under Rule of Civil Procedure 245,
once a case has been set for trial, only the trial court, and not a party, can initiate a resetting. 
Rule 245 provides:



The Court may set contested cases on written request of any party, or on the
court's own motion, with reasonable notice of not less than forty-five days to the
parties of a first setting for trial, or by agreement of the parties; provided,
however, that when a case previously has been set for trial, the Court may reset
said contested case to a later date on any reasonable notice to the parties or by
agreement of the parties.


Tex. R. Civ. P. 245. 

 Appellants argue that the court had previously set the case for trial and that
Dunlap's attorney Randall Grimes "reset" the case for the later trial date, on which appellants
defaulted. The record shows that the case was set for trial the week of August 5, 1991. The
transcript contains a copy of a letter dated August 7, 1991, that Grimes sent appellants' attorney
Elden Haugen. In the letter, Grimes advises Haugen that the case has been set for jury trial on
Monday, September 16, 1991; Grimes requests Haugen to tell him if his schedule conflicts with
this date. The record does not show that Grimes obtained the September 16th resetting. The
record shows no more than that the trial court, as authorized by Rule 245, reset the case to
September 16th. No error occurred in the manner by which the trial date was set. 

 Appellants next claim that the record shows error because notice of the resetting
was sent to the wrong address. In April 1991, appellants' attorney Haugen filed a court-ordered
declaration with the clerk showing his mailing address to be "Box 200850; Austin, Texas 78720." 
At the top of his letter notifying Haugen of the trial setting, Dunlap's attorney Grimes lists
Haugen's address as "Box 200,850; Austin, Texas 78720;" next to and beneath this address are
the notations "CERTIFIED MAIL/RETURN RECEIPT REQUESTED," and "DUPLICATE
ORIGINAL SENT BY FIRST CLASS MAIL." 

 At trial, Grimes introduced in evidence the envelope he sent to Haugen by certified
mail. The envelope is addressed to Haugen at "Box 200,850; Austin, Texas 78720." 
Endorsements on the envelope show that the postal service attempted delivery several times before
returning the envelope. A different endorsement on the envelope reads, "Returned to
Sender/Unclaimed." When an envelope is returned "unclaimed," the notice the envelope
contained is sufficient if it is apparent that the address was valid and could be located by the postal
service. Wright v. Wentzel, 749 S.W.2d 228, 232 (Tex. App.--Houston [1st Dist.] 1988, no writ);
see Michael A. Pohl & David Hittner, Judgments by Default in Texas, 37 Sw. L.J. 421, 428
(1983).

 Appellants admit that the record shows that the notice of the trial setting was sent
to Haugen at Box 200,850, but argue that adding the comma to Haugen's box number produced
a materially incorrect address. We fail to see how adding this comma could have confused or
misled the postal service. The face of the record does not demonstrate that notice of the resetting
was sent to the wrong address. The record instead provides some evidence that Grimes
adequately notified Haugen of the trial setting. 

 Appellants last argue that error appears on the face of the record because appellees
failed to certify the address of appellants' attorney to the clerk and the clerk consequently mailed
the notice of judgment to an incorrect address. See Tex. R. Civ. P. 239a; see also Tex. R. Civ.
P. 306a(3); Tex. R. App. P. 5(b)(3). Rule 239a requires the party taking a default judgment to
certify to the clerk the last known mailing address of the party against whom judgment is
rendered. The transcript in this cause does not contain this certificate. The rule also requires the
clerk to mail written notice to the party suffering the default judgment at the address shown in the
certificate. Rule 239a.

 Haugen had filed in April 1991 his court-ordered declaration stating both a
residential and a mailing address. The clerk nevertheless in October sent the notice of default
judgment to Haugen at a different address. Though it is not entirely clear from the record, this
notice appears to have been returned. Appellant Shead testified at a post-judgment hearing that
he had no notice of the default judgment until January 23, 1992.

 On appeal by writ of error, appellants are limited to showing the invalidity of the
judgment by the papers on file in the case. McEwen v. Harrison, 345 S.W.2d 706, 710-11 (Tex.
1961). The purpose of Rule 239a is to give defendants notice of a default judgment rendered
against them so they can timely file a motion for new trial or an appeal. The rule is designed as
an administrative convenience for the parties. Long v. McDermott, 813 S.W.2d 622, 624 (Tex.
App.--Houston [1st Dist.] 1991, no writ); Bloom v. Bloom, 767 S.W.2d 463, 468 (Tex. App.--San
Antonio 1989, writ denied). The error appellants attack is not one that would invalidate the
judgment; rather, appellants seek to reverse a judgment because of something occurring after it
was rendered. Grayson Fire Extinguisher Co. v. Jackson, 566 S.W.2d 321, 322 (Tex. Civ.
App.--Dallas 1978, writ ref'd n.r.e.). Noncompliance with Rule 239a is not, therefore, reversible
error on appeal by writ of error. Appellants' remedy is to file a bill of review. Long, 813
S.W.2d at 624; Bloom, 767 S.W.2d at 468; Grayson Fire Extinguisher Co., 566 S.W.2d at 322-23. We overrule point one.

 In point of error two, appellants contend that they had no notice of the pleadings
on which the trial court rendered judgment. Appellants argue first that they did not receive actual
notice of Clark/Kyser's second amended original petition. Clark/Kyser's attorney certified at the
end of this petition that he sent a copy by certified mail to Elden Haugen at "P.O. Box 200850,
Austin, Texas 78720." At trial, the envelope sent to Haugen containing the petition was admitted
in evidence. The envelope is addressed to Haugen at "P.O. Box 200850; Austin, TX 78720;" a
certified mail number appears on the envelope. One endorsement on the envelope shows that
delivery was attempted twice before the letter was returned. Another endorsement shows that the
envelope was returned "unclaimed." 

 Again, the rule applies that a notice is sufficient when the envelope containing it
is properly addressed but returned unclaimed. Wright, 749 S.W.2d at 232. In addition, evidence
of a certified letter, addressed correctly but returned unclaimed, does not overcome the
presumption of service created by a certificate of service. Cronen v. City of Pasadena, 835
S.W.2d 206, 209 (Tex. App.--Houston [1st Dist.] 1992, no writ); see Tex. R. Civ. P. 21a. The
address used to notify Haugen was the same one he had supplied the trial court. We determine
that Clark/Kyser afforded appellants adequate notice of its second amended original petition.

 Appellants next argue that no proof of service exists for Dunlap's first amended
"cross-claim and cross-action" because the certificate of service is inadequate. Beneath his
signature on the pleading, Dunlap's attorney Randall Grimes provided this certificate of service: 
"By my signature above, I certify that a true copy of the pleading was served on all other counsel
of record in accordance with the Texas Rules of Civil Procedure on the 11 day of July, 1991." 


 Appellants claim that the certificate fails to (1) specify that it was sent certified
mail, to Haugen, at a particular address; (2) identify the pleading; (3) contain Grimes' signature;
and (4) specify the rule service accorded with. Texas Rule of Civil Procedure 21a requires the
attorney of record to certify that he has served notice in compliance with the rule "in writing over
signature and on the filed instrument." See also Tex. R. Civ. P. 21. Rule 21a further allows a
certificate by an attorney of record showing service of a notice to provide prima-facie evidence
of service. 

 Grimes placed his certificate of service immediately beneath his signature on the
pleading. By doing so, he sufficiently identified the pleading served. Grimes also expressly
incorporated his signature on the pleading into his certificate. Because Rule 21a sets the general
standard for methods of service and expressly applies to pleadings required to be served under
Rule 21, Grimes' statement that he served counsel "in accordance with the Texas Rules of Civil
Procedure" could not have misled the trial court and is equivalent to certifying compliance with
"this rule." See Compusolve, Inc. v. Urban Eng'g, Inc., 799 S.W.2d 374, 376-77 (Tex.
App.--Corpus Christi 1990, no writ) (certificate attached to proper document was not fatally
defective for misnaming the document served). Rule 21a simply does not require the other
specific information for which appellants contend. Krchnak v. Fulton, 759 S.W.2d 524, 528
(Tex. App.--Amarillo 1988, writ denied) (Rules 21a and 166a(c) do not require notice of motion
for summary judgment to be given to opposing counsel); Hurt v. Bays, 537 S.W.2d 139, 140-41
(Tex. Civ. App.--Austin 1976, writ ref'd n.r.e.) (Rule 21a does not require attorney to certify that
the address where notice was served was the "last known address"). Grimes' certificate of service
qualified under Rules 21 and 21a, and provides prima-facie evidence of service under Rule 21a. 


 Appellants also argue that the pleadings failed to give adequate notice of the
elements of the actions and the relief sought. Appellants first point out that Dunlap did not attach
the contract and draw schedule to his first amended cross-claim. A pleading setting out a claim
for relief must give a short statement of the cause of action sufficient to give fair notice of the
claim. Tex. R. Civ. P. 47. Fair notice requires the pleader to communicate the elements of the
cause and the relief sought with reasonable certainty; it does not require the pleader to set out the
evidence supporting his asserted cause. Stoner v. Thompson, 578 S.W.2d 679, 683 (Tex. 1979);
Edwards Feed Mill, Inc. v. Johnson, 311 S.W.2d 232, 234 (Tex. 1958). In addition, Rule of
Civil Procedure 59 does not require these documents to be attached to the pleadings. Tex. R. Civ.
P. 59.

 In his first amended cross-claim, Dunlap articulated the elements of actions for
breach of contract and for misapplying trust funds. See Tex. Prop. Code Ann. §§ 162.001-.032
(West 1984 & Supp. 1993). The text of the contract and draw schedule merely provide evidence
to support the elements of these causes. The fair notice that Dunlap's pleadings must supply did
not extend to this evidence.

 Appellants' claim that Dunlap failed to allege the basis of Shead's individual
liability is incorrect: the pleading adequately charges Shead with liability for breach of contract
on the basis of piercing Ovation's corporate veil and with liability for misapplying trust funds. 
See Code §§ 162.001-.031(a) (West 1984 & Supp. 1993). Any failure by Dunlap to plead the
amount of trust funds Shead allegedly misapplied is of no effect as the trial court granted Dunlap
recovery only for breach of contract. See Tex. R. Civ. P. 301. Dunlap's request for reasonable
and necessary attorney's fees was sufficient to authorize an award of fees on appeal. Ledisco Fin.
Servs., Inc. v. Viracola, 533 S.W.2d 951, 958 (Tex. Civ. App.--Texarkana 1976, no writ).

 Appellants also claim that Clark/Kyser's second amended petition fails to provide
exhibits showing the materials sold Ovation, fails to provide dates of such sales, and fails to attach
the construction contract showing payments to Shead. Clark/Kyser was not required to plead or
attach these evidentiary matters. Tex. R. Civ. P. 59; Edwards Feed Mill, Inc., 311 S.W.2d at
234.

 Appellants last contend that Clark/Kyser violated Rules of Civil Procedure 162 and
163 when it took a non-suit against Dunlap at trial. Although Clark/Kyser moved to non-suit
Dunlap at trial, Dunlap was effectively dismissed as a defendant when Clark/Kyser omitted
Dunlap from its second amended original petition. Hatley v. Schmidt, 471 S.W.2d 440, 441 (Tex.
Civ. App.--San Antonio 1971, writ ref'd n.r.e.). As discussed above, appellants were notified of
this pleading. Clark/Kyser's non-suit of Dunlap did not release a principal obligor in violation
of Rule 163. Dunlap remained in the suit as cross-plaintiff and cross-defendant against Ovation
and as cross-plaintiff against Shead. We overrule point two.

 In point of error three, appellants contest the legal and factual sufficiency of the
evidence to support the judgment against them. Appellants first dispute the sufficiency of the
proof of proper service of citation and other documents, claiming that no party asked the court
to judicially notice its file. The trial court was authorized, however, to take judicial notice of its
records on its own motion. Tex. R. Civ. Evid. 201; Gardner v. Martin, 345 S.W.2d 274, 276
(Tex. 1961). 

 Appellant Shead next attacks the sufficiency of the evidence to support the judgment
for Clark/Kyser against him. Clark/Kyser pleaded causes of action against Shead individually for
breach of contract based on piercing the corporate veil and for misapplying trust funds. See Code,
§§ 162.001-.032 (West 1984 & Supp. 1993). The judgment does not state on which basis it was
rendered. Shead answered Dunlap's third-party petition, but he never responded to Clark/Kyser's
pleadings against him. By failing to answer Clark/Kyser's pleadings, Shead allowed Clark/Kyser
to obtain a judgment nihil dicit against him. The judgment nihil dicit constitutes Shead's
admission of the facts properly pleaded and his confession of judgment. Stoner, 578 S.W.2d at
682; O'Quinn v. Tate, 187 S.W.2d 241, 245 (Tex. Civ. App.--Texarkana 1945, writ ref'd). 
Clark/Kyser's pleadings gave Shead fair notice of its causes of action. We discern no fundamental
error of proof that would void the judgment for Clark/Kyser against Shead. O'Quinn, 187
S.W.2d at 245.

 Ovation and Shead each challenge the sufficiency of the evidence to support
Dunlap's recovery against them. The trial court rendered judgment for Dunlap against Ovation
and Shead on the basis of breach of contract. To obtain a default judgment against Ovation and
Shead, who had answered, Dunlap was required to prove each controverted issue in the case. 
Frymire Eng'g Co. v. Grantham, 524 S.W.2d 680, 681 (Tex. 1975). To obtain reversal of the
post-answer default judgment, Ovation and Shead must, among other things, show error apparent
from the face of the record; the face of the record includes the statement of facts. DSC Fin. Corp.
v. Moffitt, 815 S.W.2d 551, 551 (Tex. 1991). The evidence contained in the statement of facts
must support the post-answer default judgment. We review the sufficiency of the evidence by the
same standards that apply to ordinary appeals. Wright, 749 S.W.2d at 230, 233; Mountain Corp.
v. Rose, 737 S.W.2d 22, 24 (Tex. App.--El Paso 1987, writ denied); see generally Gunn v.
Cavanaugh, 391 S.W.2d 723, 724 (Tex. 1965) (writ of error affords review of the same scope
as an appeal).

 Because the trial court filed no findings of fact or conclusions of law, we infer that
the court made all findings necessary to support its judgment. Burnett v. Motyka, 610 S.W.2d
735, 736 (Tex. 1980); Lassiter v. Bliss, 559 S.W.2d 353, 358 (Tex. 1978), overruled on other
grounds, Cherne Indus., Inc. v. Magallanes, 763 S.W.2d 768 (Tex. 1989). We review
appellants' no-evidence challenge by considering only the evidence and inferences tending to
support the implied findings and disregarding all evidence and inferences to the contrary. If any
probative evidence supports the findings, they must be upheld. Responsive Terminal Sys., Inc.
v. Boy Scouts of Am., 774 S.W.2d 666, 668 (Tex. 1989); Southern States Transp., Inc. v. State,
774 S.W.2d 639, 640 (Tex. 1989). To review appellants' factual-sufficiency challenge, we
consider all the evidence and will set aside the findings only if the evidence supporting them is
so weak, or the evidence to the contrary so overwhelming, as to make them clearly wrong and
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660,
661 (Tex. 1951); West v. Watkins, 594 S.W.2d 800, 802 (Tex. Civ. App.--San Antonio 1980, writ
ref'd n.r.e.). 

 We first consider the sufficiency of the evidence to support the judgment against
Ovation. Dunlap testified at trial that he and Ovation executed a contract under which Ovation
was to build a house for Dunlap for $106,650. The contract was admitted in evidence; it was
signed on July 10, 1987, by Dunlap and Ovation, through its president Shead. As the building
progressed, Ovation and Dunlap agreed to changes in the contract, such as adding square footage
and altering a room. Dunlap testified that he and Shead signed a change order provision
incorporating the changes and increasing the contract price to $109,610. 

 About four months after beginning work on the house, Shead told Dunlap that he
would not finish it. Dunlap stated that up to that time he had paid Shead over $57,000; although
Shead had not paid certain suppliers and subcontractors, Shead would not give Dunlap records
showing outstanding bills or account for any of the money. Dunlap testified that he essentially
took Ovation's place as general contractor and finished the house himself. Dunlap's total cost to
build the house was $153,784.

 Dunlap's testimony of the change orders was some evidence of their existence and
of the increased price agreed on to build the house. Although Dunlap pleaded only the original
and not the final contract price, he fairly apprised Ovation of both his action for breach of contract
and the reasonable cost of completing the work.

 Ovation contends that no draw schedule was proven at trial. The contract provided
for progress payments during the course of construction; under its terms, Ovation was to present
Dunlap with requests to draw payment as he completed portions of the work. The contract also
required Dunlap to obtain an interim construction loan from which he would make the progress
payments. Dunlap testified that the draws were established to reimburse Shead after he had paid
the subcontractors and that the draw request forms required Shead to verify that he had paid the
bills for which he requested reimbursement. 

 Dunlap stated that he obtained the interim construction loan and that he made the
first draw on August 4, 1987, for $5,000; the second draw on September 17th for $16,400; and
the third draw on October 23rd for $36,675. On November 13th, Shead announced that he would
not continue the work. Dunlap's testimony is both legally and factually sufficient to prove the
dates and amounts of the draws. 

 Dunlap also testified that after the breach he identified and paid three major
subcontractors whom Shead had not paid in spite of having obtained draws by representing the
contrary. Dunlap subsequently identified a number of other subcontractors whom Shead had
similarly not paid from the draws. Dunlap itemized the amounts he paid for the work already
done plus the work to complete the house. The difference between the sum of these items and the
contract price for building the house was slightly larger than the amount the trial court awarded
as damages for the breach. Dunlap proved, by legally and factually sufficient evidence, both his
cause of action for breach of contract and the amount of his damages. Ovation's claims that
Dunlap's pleadings are inadequate affect only matters of evidence and are without merit.

 We consider next the sufficiency of the evidence to support the judgment for
Dunlap against Shead. The trial court rendered judgment against Shead and Ovation jointly and
severally for breach of contract. This judgment corresponds to Dunlap's pleading that Shead was
individually liable for the breach of contract based on piercing the corporate veil. Shead argues
that Dunlap presented no evidence to justify piercing the corporate veil and holding Shead
individually liable.

 Dunlap pleaded several bases for disregarding Ovation's corporate status, including
Ovation's existence as a sham that equity would not uphold. Courts will disregard the corporate
fiction on the basis of sham to perpetrate a fraud to prevent the corporate privilege from being
used for illegal, fraudulent, or unfair purposes. Matthews Constr. Co. v. Rosen, 796 S.W.2d 692,
693 (Tex. 1990); Castleberry v. Branscum, 721 S.W.2d 270, 273 (Tex. 1986). In determining
whether an entity's corporate status should be disregarded, the supreme court has looked for
evidence of both constructive fraud and a sham corporation that abuses the corporate privilege. 
Castleberry, 721 S.W.2d at 275. Constructive fraud requires the breach of a legal or equitable
duty that the law declares fraudulent because of its tendency to deceive, violate confidence, or
injure public interests. Id. at 273. 

 Shead was serving as president of Ovation when Ovation contracted to build
Dunlap's house. The construction contract required Ovation to request, and Dunlap to make,
progress payments as Ovation completed phases of the building. Dunlap testified that he made
over $57,000 in draw payments to Shead before Shead defaulted on the contract. Chapter 162 of
the Property Code rendered these construction payments trust funds. Code, § 162.001 (West
1984). Either Ovation, as the contractor, or Shead, as the officer of Ovation who received and
controlled the trust funds, became the trustee of the trust funds for the benefit of the
subcontractors and materialmen. Code, § 162.002 (West 1984). A trustee who diverts trust
funds, intending to deprive the beneficiaries of them, has misapplied the trust funds, and an action
may be brought against the trustee. Code, §§ 162.005, .031 (West Supp. 1993). 

 Dunlap testified that the draw account set up under the construction contract was
to be used only for building his house. Dunlap also stated that before Shead obtained each draw
from him, Shead verified that he had paid the subcontractors and materialmen for their work on
the house to that point. Dunlap later examined all the bank records of the accounts into which the
draws were deposited. Dunlap testified that in examining Ovation's bank records, he discovered
that of the $57,625.00 Dunlap paid Shead to build his house, Shead spent $35,628.22 building it. 
Shead's use of the remaining $22,000 included a $900 check written to his wife and substantial
amounts spent on a house that Shead was building for another person. Dunlap testified that after
Shead refused to finish the house, Dunlap borrowed money to reimburse the subcontractors who
had done work but not been paid from the draws. Dunlap then continued building the house as
his own general contractor.

 Dunlap also testified that he believed that Ovation was not a valid corporation, that
it was a paper corporation, and that it had only one real employee. Dunlap did not think that
Ovation kept records. He stated that at one time Ovation hadn't paid its corporate taxes and that
at one point during 1990, Ovation had forfeited its corporate charter. 

 To determine that no evidence of sham to perpetrate a fraud exists, this testimony
would have to provide no reasonable ground from which a fact-finder could infer that Ovation
existed as a corporation in name only without substance and that Ovation, through Shead, acted
fraudulently. See Joske v. Irvine, 44 S.W. 1059, 1063 (Tex. 1898). Dunlap testified that Shead
diverted Dunlap's progress payments, money the Property Code considers trust funds to benefit
suppliers such as Clark/Kyser. Although Dunlap was not a statutory beneficiary of the trust
funds, he assumed Shead's obligations to the beneficiaries in order to finish the house Shead had
started. Dunlap's testimony provides some evidence of constructive fraud.

 Dunlap's testimony that Ovation was a paper corporation rather than a valid
corporation and that it failed to maintain corporate records, while general, is nevertheless direct
evidence. Direct evidence of a vital fact is considered to be more than a scintilla. See Robert W.
Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 363
(1960). From the evidence that Dunlap made all arrangements under the contract with Shead, that
Shead was Ovation's president, that Ovation only had one employee, and that Shead received and
disbursed the trust funds before refusing to continue the work, the fact-finder could reasonably
infer that Shead dominated Ovation's affairs. Indulging every reasonable inference in favor of
the trial court's judgment, we cannot say that no reasonable basis exists for the court to have
found some evidence of sham to perpetrate a fraud. See, e.g., Torregrossa v. Szelc, 603 S.W.2d
803, 804 (Tex. 1980). We therefore overrule point three.

 We affirm the judgment of the trial court.



[Before Justices Powers, Kidd and B. A. Smith]

Affirmed

Filed: August 11, 1993

[Do Not Publish]