# NO. 12-13-00252-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LARRY LONG, APPELLANT/CROSS-APPELLEE* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW # 2* |
| *MIKEN OIL, INC. AND MIKE TATE, APPELLEES/CROSS-APPELLANTS* | § | *GREGG COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

This cause originated as a suit by Miken Oil, Inc. and Mike Tate (Appellees or Plaintiffs), to recover operating expenses they incurred in the operation of three oil and gas leases in Gregg County, Texas. The case was tried on Appellees' claim that they and Appellant, Larry Long (also Defendant), were cotenants of the three leases and that, as the operating cotenants, Appellees were entitled to equitable contribution from their cotenant, Long, for the amount of the operating expenses incurred in excess of operating income. The trial court found a cotenancy existed between the parties and that Long owed Appellees $63,336.50 for expenses incurred in the operation of the three leases. The trial court also found that Appellees' claim constituted a suit on a sworn account.

Long raises eleven issues on appeal. In two cross-issues, Appellees contend that the trial court erred in failing to award them attorney's fees and prejudgment interest. We reverse and render judgment that Appellees take nothing.

### BACKGROUND

In 2000, Long had record title to an oil and gas lease covering the Pettit formation under the Elder and Utzman leases. Tate had record title to an oil and gas lease covering the Woodbine formation under the Elder and Utzman leases.

In 2001, Tate and Long agreed to recomplete the Elder #1 Pettit well (operated by Long) into the Woodbine formation (Tate's lease). As consideration for the use of the Pettit wellbore, Tate agreed to give, and Long "earned or agreed to take," fifty percent of the net proceeds from all production from the Woodbine wells on the Elder and Utzman leases. The Elder Pettit #1 was successfully recompleted in the Woodbine formation. Until sometime in 2008, Long received fifty percent of the net revenues from all the Woodbine wells on the Elder and Utzman leases. Tate never made an assignment of his interest in the Woodbine leases to Long. Sometime after Long and Tate entered into the arrangement, Tate assigned the leases to Miken Oil without the joinder of Long.

In 2008, Tate and Long discussed the need for a workover on the Utzman #7 (Woodbine) well. They agreed to undertake the workover and spent "probably" $150,000.00 in the effort. Tate paid bills for the workover amounting to a total of "probably" $150,000.00, although the bills identified in the record as incurred for the workover total approximately $100,000.00 ($55,000.00 from Woolley Fishing Tools and approximately $45,000.00 from Rusk County Well Service). The workover was unsuccessful. Miken Oil billed Long for the resulting deficit, but Long never paid the bill.

The Woodbine leases were never profitable after 2008. However, Appellees continued to bill Long for the deficits incurred in their operation. In 2009, the Elder (Woodbine) lease terminated because of nonproduction. Apparently, the Utzman (Woodbine) lease continued to produce until sometime in 2011.

### PROCEDURAL HISTORY

On November 10, 2010, Miken Oil filed its Original Petition alleging that Miken Oil was the operator and Miken Oil and Long were the joint owners of the Utzman, North Utzman, and Elder leases. Miken Oil alleged that Long had failed to pay his part of the operating expenses in excess of income for the three leases in the amount of $72,925.34 as shown by the attached affidavit of sworn account.

On September 5, 2012, Miken Oil, joined by Mike Tate, filed its First Amended Original Petition alleging that Plaintiffs held "record title" to oil and gas leases covering the Woodbine formation under the Elder and Utzman leases. The petition alleged that Defendant had record title to oil and gas leases covering the Pettit formation under the same tracts. The petition

alleged that Plaintiffs and Defendant were joint owners of the described leases and that Defendant was indebted to Plaintiffs for expenses incurred in the operation of the leases. Alternatively, Plaintiffs asked the court to order an accounting and that they be paid the amount shown to be due them. No statement or affidavit of sworn account was included in or attached to Plaintiffs' First Amended Original Petition.

Eight days before trial on March 25, 2013, Plaintiffs filed their Second Amended Original Petition repeating the allegations contained in their First Amended Original Petition stating that Plaintiffs' Elder and Utzman leases covered the Woodbine formation while Defendant's leases covered the Pettit formation under the same tracts. The Second Amended Original Petition claimed that Defendant owed Plaintiffs $72,925.34, but alternatively asked that they be paid the amount shown to be due them by a court ordered accounting.

Attached to the petition was an affidavit purporting to state an account in the amount of $72,925.34 as shown on the attached Exhibit "A." However, attached Exhibit "A" did not show an account but described the Elder lease. No allegation or affidavit of sworn account was contained in Plaintiffs' First Amended Original Petition. Plaintiffs' Second Amended Original Petition made no claim of joint ownership.

On April 1, 2013 (the day before trial), Defendant filed his Answer to Plaintiffs' Second Amended Original Petition. In pertinent part, Defendant specially excepted to Plaintiffs' petition, alleging that Plaintiffs' petition stated no cause of action or contractual basis for the debt claimed to be owing Plaintiffs by Defendant, and that it was impossible to determine from the petition the basis for Plaintiffs' claim for damages. Defendant further excepted to Plaintiffs' pleading of sworn account contending that their claim was "not based upon written contract or founded on business dealings between the parties, or is for personal services rendered, or labor done or labor and materials furnished." Defendant also excepted to Plaintiffs' failure to include in or attach to their petition a statement of that account. In addition, the answer asserted five affirmative defenses, including the statute of frauds.

At trial, Plaintiffs moved to strike Defendant's answer as untimely. Defendant's counsel, in arguing against Plaintiffs' motion to strike, pointed out that in their Second Amended Original Petition filed eight days earlier, Plaintiffs' theory of recovery had changed. Plaintiffs' prior petition alleged joint ownership as the basis for the recovery of their operating expenses and did not include sworn account. Their recently filed petition omitted any claim of joint ownership

3

alleging only that "Plaintiffs and Defendant have shared in the income and expenses for the wells in the Woodbine formation in the Elder and Utzman leases" and that "Defendant owed Plaintiffs $72,925.34." Appended to Plaintiffs' most recent petition was an affidavit purporting to state a sworn account as shown in Exhibit "A" attached. Exhibit "A" did not show an account. Instead, Exhibit "A" contained a description of the Elder lease (as pointed out in Defendant's special exceptions).

The trial court then solicited a response from Plaintiffs' counsel resulting in the following colloquy between the trial court judge, Plaintiffs' attorney (Mr. Smith), and Defendant's attorney (Mr. Bull).

THE COURT: All right. Mr. Smith, let me ask you, if you would, let's address – is there a distinction between your original petitions on the accounting issue as to whether they were joint owners or simply shared income and losses?

MR. SMITH: No, sir.

THE COURT: Why, why?

MR. SMITH: I suppose the wording has just changed over time, to try to call whatever it is. Judge, they had an agreement between them, I'm no – the evidence will come in, and – Mike Tate owned these leases on Elder Utzman and he gave Larry Long 50 percent of his interest; and Larry accepted checks for many, many years. And then once the wells began to deplete and were not producing, it became an expense to them, and he paid on those initially through netting of checks and then hasn't paid on anything since that time.

THE COURT: All right. If there's no distinction, then *we're going back to the allegation of prior, that they were joint owners as opposed to shared income and losses*. And Mr. Bull, Court's going to strike your amended answer to the extent that it differs from your previous answer.

If you're raising – basically, *I'm going to dial back the plaintiffs' allegations back to their previous pleading status of joint owners and just suit for accounting for operating expenses relating to the two leases*. And I'm going to strike your pleadings that were filed April 1, 2013, and we're going to go with your previous pleadings – your previous answers. This is your second amended – it's answer to their second amended original petition, is this your first amended answer?

MR. BULL: Actually, no, your Honor. Before we came in the case, Robert Sherman was the prior attorney, and he filed the first amended answer, so that would be our second amended answer, your Honor.

THE COURT: All right. I guess the cleanest way to address this is if – Mr. Bull, let me ask you, if I require the plaintiffs' pleading to go back to just allegation of joint owners as to the accounting, is there any other issues that you feel like they were changing the basis of under their second amended petition?

MR. BULL: *If their theory, your Honor, solely is that it's joint ownership and not an implied contract of some type, then, no, your Honor, that appears to be what they claimed in their first amended petition*.

4

THE COURT: Mr. Smith, *are you alleging any implied contract*?

MR. SMITH: *No, Judge*. Our pleadings, I thought, were consistent along with both the original, all the way up to the second on this issue.

THE COURT: All right. Then Court's going to sustain the plaintiffs' motion to strike defendant's answer filed April 1, 2013, but the Court is going to basically dial back plaintiffs' pleadings and basis for their accounting to simply joint owners as opposed to shared income and losses. (Emphasis added).

Plaintiffs' counsel clearly erred in assuring the court that the theories of recovery urged in their Second Amended Original Petition were the same as those alleged in their First Amended Original Petition. Nevertheless, with this assurance and with the agreement of both parties, the trial court ordered the trial conducted on the theories of recovery alleged in the first amended petition, joint ownership and an accounting, and not on those claimed in their second amended petition, sharing of income and expenses and sworn account.

Early in the trial, Plaintiff Tate testified, over Defendant's objection, that in consideration of the use of Defendant's Pettit wellbore to recomplete it in the Woodbine, he agreed to give Defendant fifty percent of all the Woodbine wells on the Elder and Utzman leases. In response to Defendant's objection, Plaintiffs' counsel explained that evidence of the agreement was offered only as proof of joint ownership. Later in Tate's testimony, Plaintiffs' counsel asked Tate if the agreement applied to the Utzman leases.

Q. How – did you ever give any interest that you owned to Larry Long in the Utzman leases?

A. Yes, he shared revenue off of that too.

MR. BULL: Objection, your Honor. We've got the same objection regarding the Utzman leases.

THE COURT: Mr. Smith, *Court's not going to permit you to pursue a claim for any agreement for sharing of expenses, other than to the extent that they might relate to a claim of joint ownership*.

Q. (BY MR. SMITH) And did –

THE COURT: Sustained. Objection sustained. (emphasis added).

In his testimony, Tate also told the court that he and Defendant agreed to rework the Utzman #7 well. The leases became unprofitable in 2008 with the steep decline in oil prices and

5

the unsuccessful effort to rework the Utzman #7. However, the record shows that, throughout the trial, the court conducted the trial in a manner consistent with its order limiting Plaintiffs' proof to the theory of recovery urged in their first amended petition—the right to contribution from a cotenant. Nevertheless, two months after trial, the trial court granted Plaintiffs' trial amendment adding "implied contract" as a theory of recovery.

In their trial amendment, Plaintiffs claimed they were due $63,336.50. The trial court rendered judgment for Plaintiffs in that amount.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The trial court made the following findings of fact and conclusions of law relevant to the determination of this appeal.

**FINDINGS OF FACT**

1. Plaintiffs filed this suit on November 15, 2010 against Larry Long. On September 5, 2012, Plaintiffs filed their First Amended Original Petition, and added Riverine, L.L.C. as a Defendant in addition to Larry Long. On February 8, 2013, Plaintiffs filed their Motion to Nonsuit Defendant Riverine, L.L.C. without Prejudice. As a result, the remaining parties at trial were Plaintiffs, Mike Tate and Miken Oil, Inc., and Defendant, Larry Long.

2. In their live pleading at trial, Plaintiffs' Second Amended Petition,[1] [Plaintiffs] alleged they were entitled to reimbursement for money spent by Plaintiffs on wells in the Woodbine formation in the Elder and Utzman Leases. Plaintiffs also requested the Court partition the Young and Thrash leases in kind. Plaintiffs alleged Plaintiffs and Defendant were joint owners of the working interest of the oil, gas and mineral leases on the Young and Thrash leases.

3. On March 28, 2013, Defendant filed his Motion to Transfer Venue and Alternatively, Plea in Abatement. Defendant alleged that venue for Plaintiffs' partition claims on the Young and Thrash leases was Rusk, County. Texas.

4. Hearing on Defendant's Motion to Transfer Venue and Alternatively, Plea in Abatement was held on April 2, 2013, before the start of trial. On agreement by counsel for both parties, the Court severed Plaintiffs' partition claims of the Young and Thrash leases and transferred the partition claims to Rusk County, Texas. The Court signed the order severing the partition claims on the Young and Thrash leases, and transferring the partition claims to Rusk County, Texas on May 21, 2013.

5. Defendant's Plea 1n Abatement, which alleged absence of necessary parties regarding the Young and Thrash leases, need not be decided by the Court as a result of the severance and transfer of the claims arising from the partition of the Young and Thrash leases.

6. The Court, having had the opportunity to observe the demeanor and testimony of the Plaintiff in this case, Mike Tate, finds that the testimony was credible and further finds that Mike Tate's testimony as well as the 1099s admitted into evidence by Plaintiffs show that a tenancy in

---

[1] This case was actually tried on the allegations raised in Plaintiffs' First Amended Original Petition.

6

common existed between Plaintiffs and Defendant regarding the Elder, Utzman and North Utzman Leases.

7. Additionally, based on the evidence presented by Plaintiffs through the testimony of Mike Tate, the Court finds that Defendant was in charge of the reworking of the Utzman #7 well, had full knowledge of and directed the incurring of $150,000 in expenses. As Defendant was 1n charge of these expenditures, such expenditures were reasonable, necessary and beneficial.

8. The Court further finds that Plaintiffs paid in full for the $150,000 in expenses incurred by Defendant for the reworking of the wells in the Elder and Utzman leases, including the portion of the expenses owed by Larry Long, for which Plaintiffs are entitled to reimbursement from Defendant.

9. Plaintiffs' evidence, including the signed verification of Mike Tate attached to Plaintiffs' Second Amended Petition,[2] as well as the testimony proffered under oath at trial by Mike Tate, showed that the amount due and owing on the sworn account to Plaintiffs by Defendant is $63,336.50, after accounting for all just and lawful offsets, payments and credits.

10. The Court finds that Defendant owes Plaintiffs $63,336.50 for past due expenses associated with expenses associated with the Elder and Utzman leases.

11. On June 4, 2013, Plaintiffs filed their Motion to File Trial Amendment: Implied Contract, asking the Court to add implied contract as one of the theories of liability against Defendant. The Court signed Plaintiffs' Motion regarding the addition of an implied contract claim against Defendant on June 11, 2013 and filed said Order on June 13, 2013.

12. On June 19, 2013, Plaintiffs filed their Brief on Entitlement to Attorney's Fees and Pre-Judgment Interest. Immediately prior to the Hearing on Plaintiffs' Motion for Judgment on the Verdict on June 20, 2013, the Court entertained argument by Counsel on Plaintiffs' Brief on Entitlement to Attorney's Fees and Prejudgment Interest, which the Court denied in a Letter Ruling issued on July 15, 2013.

## CONCLUSIONS OF LAW

13. The Court has personal jurisdiction over the Defendant because Defendant resides in Gregg County, Texas, and the remaining property at issue in the case is located in Gregg County, Texas.

14. Mandatory venue for actions involving partition of real property is the county in which all or part of the property is located. TEX. CIV. PRAC. & REM. CODE § 15.011.

15. One who has previously waived an opportunity to transfer venue may regain such opportunity when the plaintiff amends his pleading to allege a new cause of action implicating a different venue. *Bristol v. Placid Oil Co.,* 74 S.W.3d 156, 159 *fn.2* (Tex. App.-Amarillo 2002, no pet.).

16. Owners of undivided portions of oil and gas rights are tenants in common. *Willson v. Superior Oil Co.,* 274 S.W.2d 947, 950 (Tex. App.-Texarkana 1954, writ ref'd n.r.e.).

17. The question of whether to grant an equitable remedy lies within the discretion of the trial judge. *Estate of Pollack,* 858 S.W.2d 388, 390 (Tex. 1993).

18. When two persons are cotenants and one of them incurs expense in the improvement of the property which is necessary and beneficial, it is equitable that the one incurring the expense shall have contribution from his cotenant in an amount which is in proportion to the undivided interest owned by such cotenant. *Wagner & Brown, Ltd v. Sheppard,* 282 S.W.3d 419, 425 (Tex. 2007).

---

[2] Sworn account was not pleaded in Plaintiffs' First Amended Original Petition.

7

19. The Court concludes that an implied contract existed between Plaintiffs and Defendant from which Plaintiffs' claim for reimbursement arises.

20. A prevailing party cannot recover attorney's fees from an opposing party unless permitted by statute or contract. *Holland v. Wal-Mart Stores, Inc.,* 1 S.W.3d 91, 95 (Tex. 1999). As the availability of attorney's fees under a particular statute is a question of law, the Court concludes that Plaintiffs' cause of action for which they recovered damages does not fall within the categories enumerated in TEX. CIV. PRAC. & REM. CODE § 38.001.

21. Prejudgment interest is a loss of use of money due as damages during the period between accrual of the claim and the date of judgment. *Durham Transp. Co. v. Beetner,* 201 S.W.3d 859, 876 (Tex. App.-Waco 2006, pet. denied). Because Plaintiffs' claim was based on the reimbursement of money already expended, the court further concludes there was no loss of use of money and Plaintiffs are not entitled to pre-judgment interest.

22. Based on the Court's conclusions, judgment should be rendered in favor of Plaintiffs for the sum of $63,336.50, together with Court costs and post judgment interest. The Court signed separate Final Judgment in this case on July 12, 2013 and filed the Final Judgment on July 15, 2013.

SIGNED: ---**A**-**U**-**G**- -**2**- -**9**- -**20**-**1**-**3**- ----

/s/_____

JUDGE PRESIDING


## COTENANCY

In his second issue on appeal, Long contends the evidence is legally and factually insufficient to support the trial court's conclusion that the parties were leasehold cotenants in the Woodbine formation under the Elder and Utzman leases.

## Standard of Review

In an appeal of a judgment rendered after a nonjury trial, a trial court's findings of fact have the same weight as a jury's verdict, and the standard of review of the trial court's findings of fact is the same as that applied in reviewing a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review de novo a trial court's conclusions of law. *See Benedictine Sisters of the Good Shepherd v. Ellison*, 956 S.W.2d 629, 631 (Tex. App.—San Antonio 1997, pet. denied)

If an appellant is attacking the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate on appeal that there is no evidence to support the adverse finding. *See Croucher v. Croucher*, 660 S.w.2d 55, 58 (Tex. 1983). In reviewing no evidence issues, the reviewing court views the evidence in the light most favorable to the verdict, indulging every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The reviewing court must credit evidence

that supports the verdict if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id*. at 827. We must determine whether the evidence at trial would enable a reasonable and fair minded person to find the facts at issue. *Id.* The fact finder is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id*. at 819. We sustain a no evidence issue only when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.*

If a party is attacking the factual sufficiency of an adverse finding on an issue for which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *See Croucher*, 660 S.W.2d at 58. In addressing a factual sufficiency of the evidence challenge, this court must consider and weigh all of the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). This court is not a fact finder, and we may not pass on the credibility of the witnesses or substitute our judgment for that of the trier of fact. *Clancy v. Zale Corp*., 705 S.W.2d 820, 826 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Findings of fact are the exclusive province of the fact finder. *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744 (Tex. 1986). Accordingly, if there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Beall v. Ditmore*, 867 S.W.2d 791, 795-96 (Tex. App.—El Paso 1993, writ denied). Where there is conflicting evidence, the fact finder's decision on such matters is generally regarded as conclusive. *Id*. at 796.

## Applicable Law

A cotenancy exists when two or more persons share the unity of exclusive use and possession in property held in common. *Laster v. First Huntsville Props.*, 826 S.W.2d 125, 129 (Tex. 1991). Cotenancy may exist in mineral estates as in surface estates. *See Way v. Venus*, 35 S.W.2d 467, 468 (Tex. App.—El Paso 1931, no writ). "Working interest owners" in the same mineral leasehold estate are cotenants. *See Willson v. Superior Oil Co*., 274 S.W.2d 947, 950 (Tex. Civ. App.—Texarkana 1954, writ ref'd n.r.e.). Each cotenant may enter upon the premises for the purpose of exploring for oil and gas and may drill and develop the premises. *Id*.

The present right to possession is essential because one who is not entitled to possession of the property is not a cotenant. *Laster*, 826 S.W.2d at 129. Actual possession of the minerals in the case of oil and gas means drilling and production of oil and gas. *Natural Gas Pipeline of Am. v. Pool*, 124 S.W.3d 188, 193 (Tex. 2003).

**Discussion**

The trial court concluded (although designated as a fact-finding) that a tenancy in common existed between Plaintiffs and Long in the Woodbine formation in the Elder and Utzman leases. No fact findings support this conclusion except for the trial court's finding that "[t]he Court having had the opportunity to observe the demeanor and testimony of the Plaintiff in this case, Mike Tate, finds that the testimony was credible and further finds that Mike Tate's testimony as well the 1099s admitted into evidence by Plaintiffs show that a tenancy in common existed . . . ." (At trial, the court actually excluded the introduction of the 1099s.). Further in its conclusions, the trial court stated that "it is equitable that the one incurring the expense shall have contribution in an amount which is in proportion to the undivided interest owned by such cotenant."

There was no pleading of cotenancy in Plaintiffs' Second Amended Original Petition. But upon Plaintiffs' counsel's assurance that there was no difference in the claims raised therein from those urged in the previous petition, the trial court announced its intention to try Plaintiffs' claim for contribution from a cotenant raised in the first amended petition but not in the second amended petition. Counsel for both sides acquiesced in this arrangement.

Long had record title to an oil and gas lease covering the Pettit Formation under the Elder and Utzman leases. Miken Oil and Tate had record title to oil and gas leases covering the Woodbine formation under the same leases. These leases described the same tracts. The parties are agreed that this in itself did not create a cotenancy. Plaintiffs' claim of cotenancy rests on Tate's testimony that he gave Long, and Long agreed to take, a fifty percent interest in Tate's Woodbine wells on the Utzman and Elder leases in consideration of Long's agreement to the recompletion of his Elder #1 Pettit well in the Woodbine formation. Tate testified that the recompletion was successful and that for the next eight years Long received the net revenue from Tate's Woodbine wells on the Elder and Utzman leases.

Neither Tate nor Miken Oil made a written assignment of a fifty percent interest in the Woodbine leases to Long. Tate testified that some years after his verbal agreement with Long,

he assigned the Woodbine leases to Miken Oil without Long's permission or joinder. When asked what if Mr. Long had assigned the interest the plaintiffs alleged he had to someone else, Tate responded that Long did not have an interest to assign. Tate further testified that Long had no right to drill a well into the Woodbine formation under the Elder and Utzman leases. Tate's testimony shows that Long had no right to possession of the leases in question. Absent this essential element, there is no cotenancy.

The record shows conclusively that a cotenancy did not exist between the parties in the Woodbine formation under the Elder and Utzman leases. Therefore, Tate and Miken Oil had no right to contribution from Long based upon cotenancy. Long's second issue is sustained.

### TRIAL AMENDMENT

In his fourth issue, Long maintains that the trial court erred in granting a trial amendment two months after trial adding "implied contract" as a theory of recovery. He complains that granting Plaintiffs' motion adding a new theory of recovery two months after the close of evidence precluded a defense to the claim. Long also contends there is legally and factually insufficient evidence to support the trial court's finding that "an implied contract existed between Plaintiffs and Defendant from which Plaintiffs' claim arises." Plaintiffs contend that the issue of "implied contract" was tried by consent.

#### Applicable Law

Generally, a trial court has no discretion to refuse a trial amendment unless (1) the opposing party presents evidence of surprise or prejudice, or (2) the proposed amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to it. *Chapin & Chapin, Inc. v. Tex. Sand & Gravel Co., Inc*., 844 S.W.2d 664, 665 (Tex. 1992); TEX. R. CIV. P. 63, 66. A trial amendment is mandatory if it is merely procedural in nature, such as when conforming the pleadings to the evidence presented at trial. *Chapin*, 844 S.W.2d at 665. An amendment is not mandatory if it is substantive, that is if it changes the nature of the trial. *Id*. If the trial amendment is not mandatory, the decision to allow or deny the amendment is within the sound discretion of the trial court. *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994). However, a trial amendment comes too late when the party desires to plead new or independent grounds of recovery or defense that could have been pleaded

11

earlier and that will prejudice the other party. ***Dorchester Gas Producing Co. v. Harlow Corp***., 743 S.W.2d 243, 259-60 (Tex. App.—Amarillo 1987, writ dism'd).

A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating that the parties understood the issue was in the case, and the other party failed to make an appropriate complaint. ***Continental Homes of Tex., L.P. v. City of San Antonio***, 275 S.W.3d 9, 16 (Tex. App.—San Antonio 2008, pet. denied). To determine whether an issue is tried by consent, the reviewing court must examine the record for evidence of trial of the issue, not just for admission of evidence on the issue. ***Id***. at 16.

Trial by consent is intended to apply only in exceptional cases where it clearly appears from the record that the parties tried the unpleaded issue. ***Ranger Ins. Co. v. Robertson***, 707 S.W.2d 135, 142 (Tex. App.—Austin 1986, writ ref'd n.r.e.). It should not be applied in doubtful cases. ***Id.*** It does not apply when the evidence on the unpleaded matter is relevant to the issues pleaded, because it would not be calculated to elicit an objection. ***City of San Antonio v. Lopez***, 754 S.W.2d 749, 751 (Tex. App.—San Antonio 1988, writ denied). Where proffered evidence is relevant to a pleaded cause of action as well as to an unpleaded matter, failure to object does not constitute trial by consent. ***Boyles v. Kerr***, 855 S.W.2d 593, 601 (Tex. 1993.)

**Discussion**

Plaintiffs filed a motion to strike Defendant's Second Amended Original Answer filed in response to Plaintiffs' Second Amended Original Petition filed eight days before. In arguing for the motion, Plaintiffs' counsel told the court that there was no substantial difference in the theories of recovery urged in the first and second amended petitions. Plaintiffs erred seriously in giving the trial court this assurance. The basis of recovery urged in the two petitions were entirely different. The second amended petition did not allege cotenancy or joint ownership. The first amended petition urged joint ownership as the basis of recovery; the second amended petition stated only that the parties had shared income and expenses from the leases. This was apparently intended to imply that an agreement to share income and expenses existed. However, no such claim was raised in the first amended petition. The second petition contained a flawed affidavit of sworn account; the first petition did not mention sworn account.

After being assured that there was no actual difference in the Plaintiffs' claims in the two petitions, the trial court informed the parties that they would proceed to trial on Plaintiffs' claim for contribution from a cotenant raised in the first amended petition. Throughout the trial, the

12

court adhered to the course adopted. When Plaintiffs' counsel first attempted to elicit Tate's testimony regarding his agreement with Long, counsel for Long objected, as follows:

> MR. BULL: Objection, your Honor. He's testifying to an agreement, possibly a contract, which Plaintiffs said was not the basis of their claim.
>
> MR. SMITH: Your honor, *this goes to the joint interest, and this is how they acquired their joint interest*. (Emphasis added).

Later, Plaintiffs' counsel attempted to elicit testimony regarding the application of their agreement to the Utzman leases.

> Q. How – did you ever give any interest that you owned to Larry Long in the Utzman leases?
>
> A. Yes, he shared income off of that too.
>
> MR. BULL: Objection, your honor. We've got the same objection regarding the Utzman leases.
>
> THE COURT: Mr. Smith, *Court's not going to permit you to pursue a claim for any agreement for sharing of expenses other than to the extent that they might relate to a claim of joint ownership*. Sustained. Objection sustained. (Emphasis added).

Much later in the trial, in overruling another defense objection to testimony about verbal agreements, the trial court observed, "The court is holding plaintiffs to their pleadings that they were joint owners. To the extent that the testimony relates to the extent of that ownership, I'm going to permit it." Throughout the trial, Plaintiffs' counsel assured the court that the evidence of the agreements between Long and Tate was relevant to the pleaded issue of joint ownership.

It is not clear from Plaintiffs' bare-bones trial amendment pleading of "implied contract" what they allege was implied. But Plaintiffs apparently intended the "implied contract" to mean that the oral agreements between Tate and Long and their subsequent conduct implied an agreement to share income and expenses from the leases in question.

The trial court, however, made it clear that it was admitting the evidence of the agreements only insofar as it was relevant to proof of joint ownership. As already noted, the trial court went so far as to declare "[the] court's not going to permit you to pursue a claim for any agreement for sharing of expenses other than to the extent they might relate to a claim of joint ownership." At the trial's commencement, Plaintiffs' counsel told the court that they were not alleging any implied contract. Nevertheless, two months after trial, Plaintiffs moved the court "to add the claim of implied contract to Plaintiffs' theories of liability against Defendant."

13

Plaintiffs argue that although Long objected to any agreement to share income and expenses, the court took several of Long objections "under advisement." Plaintiffs maintain that, by failing to obtain a ruling on these objections, Long allowed evidence into the record regarding the agreement to share income and expenses. Therefore, they contend that the issue was tried by consent, and the court did not err in granting the trial amendment. In Plaintiffs' view, the evidence was developed under circumstances that the parties understood the issue was in this case. We disagree.

Trial by consent is intended to apply only in those exceptional cases where the record clearly shows that the parties tried the unpleaded issue. *Ranger Ins. Co*., 707 S.W.2d at 142. It should not be applied in doubtful cases. *Id*. This is not a doubtful case. The arrangement under which the case proceeded to trial, the representations of Plaintiffs' counsel, and the trial court's rulings and observations during the testimony demonstrate that an agreement to share income and expenses, whether express or implied, was not tried by consent.

In their Appellees' brief, Plaintiffs also argue that the trial court erred in proceeding to trial on their claims raised in their First Amended Original Petition rather than those urged in their Second Amended Original Petition wherein they alleged that Plaintiffs and Defendant shared revenue and expenses from the subject leases. However, the trial court adopted the arrangement under which the case went to trial only after being assured by Plaintiffs' counsel that they were not claiming under an implied agreement. Neither party objected when the court stated it was "dialing back" to the claims Plaintiffs raised in their First Amended Original Petition–joint ownership and an accounting.

In granting the trial amendment adding a new independent theory of recovery two months after the close of evidence, the trial court precluded any defense against Plaintiffs' claim. Defendant was obviously prejudiced thereby. The trial amendment added a new theory of recovery expressly renounced by Plaintiffs at trial and barred by the court during trial. The trial court abused its discretion in granting the trial amendment. Long's fourth issue is sustained.

## SWORN ACCOUNT

In his ninth issue, Long argues that Plaintiffs are not entitled to recover against him under a sworn account.

14

**Applicable Law**

A suit on a sworn account is not an independent cause of action; it is a procedural rule for proof of certain types of contractual claims. *See* TEX. R. CIV. P. 185; *Rizk v. Fin. Guardian Ins. Agency, Inc.*, 584 S.W.2d 860, 862 (Tex. 1979). It is not the basis for any cause of action. *See Rizk*, 584 S.W.2d at 862. It is merely a rule of evidence which, if there is no proper denial, avoids the necessity of proving the correctness of the account. *Hollingsworth v. Nw. Nat'l Ins. Co.*, 522 S.W.2d 242, 245 (Tex. App.—Texarkana 1975, no writ). The rule applies to actions or defenses founded upon an open account or other claim for goods, wares, and merchandise, including for a liquidated money demand based upon a written contract or founded on business dealings between the parties, or is for personal service rendered, or labor done or labor or materials furnished, on which a systematic record has been kept. TEX. R. CIV. P. 185. Proof of the contract or sale that gave rise to the account must be made as alleged. *Hollingsworth*, 522 S.W.2d at 245. The rule does not apply to transactions between third parties or parties who were strangers to the transaction. *Gibson v. Bostick Roofing & Sheet Metal Co*., 148 S.W.3d 482, 490 (Tex. App.—El Paso 2004, no pet.).

Claims for liquidated money demands based on written contracts or founded on business dealings between the parties may be brought on sworn account. TEX. R. CIV. P. 185. But this provision does not enlarge the rule to cover actions other than for goods sold, services rendered, labor done, or labor and materials furnished. *Hollingsworth*, 522 S.W.2d at 245. A claim is liquidated for a suit on sworn account if the amount of damages may be accurately calculated by the trial court from the factual, as opposed to the conclusory, allegations in the plaintiffs' petition and the instrument in writing. *Pine Trail Shores Owners Ass'n, Inc. v. Aiken*, 160 S.W.3d 139, 144 (Tex. App.—Tyler 2005, no pet.). When a plaintiff's suit on sworn account is not based on a liquidated amount, the pleadings are neutralized and the plaintiff must prove his case at common law. *Jones v. Ben Maines Air Conditioning, Inc*., 621 S.W.2d 437, 438 (Tex. App.—Texarkana 1981, no pet.). A systematic record must have been kept on all claims brought under the rule. *Id.* A suit on a sworn account must be accompanied by the affidavit of the plaintiff, his agent, or his attorney that (1) the claim is within the knowledge of the affiant, (2) that the claim is just and true, (3) the account is due, and (4) all just and lawful offsets, payments and credits have been allowed. TEX. R. CIV. P. 185; *Andrews v. E. Tex. Med. Ctr*., 885 S.W.2d 264, 266 (Tex. App.—Tyler 1994, no writ). A defendant is not required to file a sworn denial if the

15

plaintiff's suit on a sworn account is not properly pleaded. ***Panditi v. Apostle,*** 180 S.W.3d 924, 927 (Tex. App.—Dallas 2006, no pet.).

If a plaintiff's pleading of a sworn account is defective or if the defendant files a proper sworn denial, the plaintiff must offer proof of the sworn account. ***Solano v. Syndicated Office Sys.***, 225 S.W.3d 64, 67 (Tex. App.—El Paso 2005, no pet.); ***Enernational Corp. v. Exploitation Eng'rs, Inc.***, 705 S.W.2d 749, 750 (Tex. App.–Houston [1st Dist.] 1986, writ ref'd n.r.e.). In a suit on sworn account, the plaintiff must prove (1) there was a sale or delivery of the goods or services, (2) the charges on the account are just, that is, the prices charged are in accordance with an agreement or, in the absence of an agreement, are usual, customary, and reasonable, and (3) the amount remains unpaid. ***Solano***, 225 S.W.3d at 67. If these pleading requirements are met, and the opposing party fails to file a verified denial, the petition and affidavit are prima facie evidence of a sworn account. TEX. R. CIV. P. 185.

The failure to follow Rule 185 by filing a sworn denial precludes the defendant from disputing the receipt of the items or services or the correctness of the claim. ***Airborne Freight Corp. v. CRB Mktg., Inc***., 566 S.W.2d 573, 574 (Tex. 1978).

**Discussion**

Several grounds preclude Plaintiffs' recovery under a sworn account.

There was no allegation of sworn account in Plaintiffs' First Amended Original Petition, the pleading on which the case went to trial. No mention of such a claim was made during the testimony or arguments. Plaintiffs offered no evidence purporting to prove a sworn account. Reference to a sworn account first appears as a conclusion of the trial court in the findings of fact and conclusions of law filed two months after trial.

An affidavit of sworn account was appended to Plaintiffs' Second Amended Petition. The affidavit states that Exhibit "A' attached thereto "is a true and correct statement of the money owed by Larry Long to Miken Oil Inc." However, Exhibit "A" attached contains no statement of the account. Rather, it contains a legal description of the four tracts in the Elder lease. The affidavit does not state that the claim is "just and true" as required by Rule 185.

Against such a defective pleading of a sworn account, a defendant is not required to file a written denial under oath. ***Enernational Corp.***, 705 S.W.2d at 750. Therefore, even if Plaintiffs' sworn account claim was before the court, the supporting affidavit could not be received as prima facie evidence of the claim. *See **Gevinson Assocs. v. Ling Elec., Inc***., 373 S.W.2d 564,

16

566 (Tex. Civ. App.—Dallas 1963, no writ). Plaintiffs were required to prove the underlying agreement for the sale or delivery of the goods and services, the sale and delivery of the goods or services, that the charges on the account are just (that is, the prices charged were in accordance with an agreement or, in the absence of an agreement, were usual, customary and reasonable prices for the goods or services), and that the account remains unpaid. *Andrews*, 885 S.W.2d at 266.

A suit on a sworn account is not an independent cause of action. *Rizk*, 584 S.W.2d at 862. To recover under a sworn account, Plaintiffs were required to prove, as pleaded, the contract, sale, or relationship from which they derive their right to recover the account. *Hollingsworth*, 522 S.W.2d at 245. We believe that Plaintiffs' grounds for recovery are limited to those stated in their First Amended Original Petition, which were the issues heard at trial. That petition did not allege a sworn account.

However, even if we consider the claims made in both petitions and the trial amendment, there are only three bases for recovery on the account alleged—contribution from a cotenant, an agreement to share income and expenses implied from the parties' history of sharing income and expenses, and an express contract to share income and expenses. The pleadings and evidence preclude Plaintiffs' recovery under any of the theories advanced.

We have heretofore held that Plaintiffs had no right of contribution from Long as a cotenant because the record conclusively established that there was no cotenancy. Similarly, we have determined that evidence of an implied contract was admitted only insofar as it tended to prove cotenancy. The issue of an implied contract to share income and expenses on the leases was not tried by consent, and the trial court abused its discretion in allowing the trial amendment two months after the close of evidence alleging "implied contract" as a theory of recovery. Therefore, there is no pleading or evidence supporting the recovery of the account on the theory of implied contract. Finally, there is no pleading of express contract in either petition or the trial amendment. There can be no recovery on that basis. Plaintiffs have no right to recover on a sworn account. Long's ninth issue is sustained.

Although not necessary to our decision, it should be noted that there is a complete absence of proof that the expenses were usual, customary, and reasonable. Except for part of the costs related to the reworking of the Utzman #7, the accounts offered into evidence at trial were summaries of the totals of monthly billings. The summaries give no indication of the goods or

services provided or when they were provided. In his testimony, Tate conceded that some expenses were erroneously billed to Long. Overhead charges were not necessarily based on Plaintiffs' actual expenditures. Plaintiffs introduced invoices related to the rework of the Utzman #7 totaling approximately $100,000.00. However, Tate testified that the rework cost "probably $150,000." Plaintiffs offered no explanation for the other $50,000.00 claimed for the Utzman #7. It is questionable whether Plaintiffs accounted for the continued oil production from the Utzman lease. There appeared to be conflicting evidence of the amount of Long's balance at the beginning of the accounting. And even if Plaintiffs had established a right to recover under theories pleaded or which might have been pleaded, given the nature of the evidence, a reliable calculation of the amount due on the account would have been problematic, if not impossible.

## DISPOSITION

Having sustained Long's second, fourth, and ninth issues, we *reverse* the judgment of the trial court and *render* judgment that Appellees/Plaintiffs take nothing. Our disposition of these issues makes it unnecessary for us to address Long's remaining issues or the issues raised in the cross-appeal. *See* TEX. R. APP. P. 47.1.

BILL BASS
Justice

Opinion delivered August 20, 2014.
*Worthen, C.J., Hoyle, J., and Bass, Retired J., sitting by assignment,*
*Twelfth Court of Appeals.*

(PUBLISH)

18



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 20, 2014**

**NO. 12-13-00252-CV**

**LARRY LONG,**
Appellant/Cross-Appellee,
V.
**MIKEN OIL, INC. AND MIKE TATE,**
Appellees/Cross-Appellants

Appeal from the County Court at Law No 2

of Gregg County, Texas (Tr.Ct.No. 2010-2433-CCL2)

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that the judgment should be reversed and rendered.

It is therefore ORDERED, ADJUDGED and DECREED by this court that the judgment in favor of Appellees, **MIKEN OIL, INC. AND MIKE TATE**, be, and the same is, hereby **reversed** and judgment is **rendered** that Appellees **take nothing.** All costs in this cause expended in this court be, and the same are, hereby adjudged against the Appellees, **MIKEN OIL, INC. AND MIKE TATE,** for which let execution issue; and that this decision be certified to the court below for observance.

Bill Bass, Justice.

*Worthen, C.J., Hoyle, J., and Bass, Retired J., sitting by assignment, Twelfth Court of Appeals.*